# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| DIOGU KALU DIOGU II, LL.M., | § | |
| AS NEXT FRIENDS OF DKKD III | § | |
| AND NMKD, MINOR CHILDREN; | § | |
| DIOGU KALU DIOGU II, LL.M., | § | |
| ON BEHALF OF THEMSELVES AND ALL | § | |
| OTHERS SIMILARLY SITUATED; | § | |
|     PLAINTIFFS, | § | |
| *VS* | § | |
| | § | CASE NUMBER: _____. |
| LAKELAND WEST CAPITAL 41, LLC, | § | |
| AND ADAM MCKEE; | § | DEMAND FOR JURY TRIAL |
| | § | |
| AND | § | |
| | § | CIVIL RIGHT VIOLATION |
| MR. JEFF LEVA; MS. SANDY | § | FDCPA ND TDCA |
| DASIGENIS; LILLIAN POETKER; | § | FORECLOSURE FRAUD |
| DBA FORECLOSURE NETWORK | § | |
| OF TEXAS; | § | |
| | § | |
| AND | § | |
| | § | |
| KIM E. LEWINSKI, ESQ; BRADLEY E. | § | |
| RAUCH, ESQ; MICHAEL J. | § | |
| DURRSCHMIDT, ESQ; AND HIRSCH | § | |
| & WESTHEIMER, PC; | § | |
| | § | |
| AND | § | |
| | § | |
| EVA SHAFIR ENGLEHART AND | § | |
| MARC DOUGLAS MYERS | § | |
| | § | |
| AND | § | |
| | § | |
| KEVIN M. EPSTEIN | § | |
| UNITED STATES TRUSTEE | § | |
| DEFENDANTS | § | |

**PLAINTIFFS' COMPLAINT**

Plaintiffs, Diogu Kalu Diogu II, LL.M., As Next Friends Of **DKKD III** And
NMKD, Minor Children; Diogu Kalu Diogu II, LL.M, individually and on behalf of
all others similarly situated, by way of Complaint against Defendants, Lakeland
West Capital 41, LLC, And Adam Mckee, Jeff Leva; Sandy Dasigenis; Lillian
Poetker; DBA Foreclosure Network Of Texas[1], Kim E. Lewinski; Mr. Bradley E.
Rauch; Michael J. Durrschmidt; and Hirsch & Westheimer, PC[2]; Eva Shafir
Englehart and Marc Douglas Myers; Kevin M. Epstein of the US Trustee[3], Region 7,
says:

## I.    NATURE OF THE ACTION

1.      This action is brought by Plaintiffs, individually and demands a trial by
jury, for the illegal practices of the Defendants who used unfair, unconscionable, false,
deceptive, and misleading practices, and other illegal practices, while attempting to
collect alleged debts from Plaintiffs in violation of the Fair Debt Collection Practices
Act, 15 U.S.C. § 1692, et seq. ("FDCPA") and as amended Effective November 30, 2021,
by New Regulation F and Texas Debt Collection Act, Tex. Fin. Code § 392, et seq.
("TDCA") and other state law violations.

2.      Effective November 30, 2021, the Consumer Financial Protection Bureau
(CFPB) enacted Regulation F codified under 12 C.F.R. 1006, which is the first
comprehensive federal debt collection regulation interpreting the Fair Debt Collection
Practice Act (FDCPA).

---

[1] Foreclosure Network of Texas is a Houston area-based company that specializes in Foreclosure Trustee
services for all 254 Counties in Texas. This includes posting and filling the Notice in the designated
location; conducting the Foreclosure sale; and recording the Substitute Trustee's Deed. Please contact
me at Sandy@fctrack.com. Url: https://www.linkedin.com/in/sandy-dasigenis-b93487174/
[2] https://www.hirschwest.com/attorneys/eric-c-mettenbrink/ .... consumer rights, lien disputes,
Deceptive Trade Practices Act, ***Debt Collection Practices Act,.....................................(Visited
9/15/2022)***
[3] United States Trustees appoint and supervise private trustees who administer bankruptcy estates under
chapters 7, 11, 12, and 13 of the Bankruptcy Code. Private trustees are not government employees. They do,
however, work in concert with the United States Trustee to ensure the efficiency and integrity of the bankruptcy
system.

3.       On information and belief in addition to arguing that the FDCPA protects homeowners facing all kinds of foreclosure, Plaintiffs have attached NAACP Legal Defense and Educational Fund (LDF)'s amicus brief highlighting the particular risks faced by African-American homeowners. *Obduskey v. McCarthy & Holthus LLP,* No. 17-1307, 2019 WL 1264579, (U.S. Mar. 20, 2019)

4.       The brief explained that, due to more than a century of discriminatory housing policies, African Americans are more vulnerable to debt collection abuses by law firms like HIRSCH & WESTHEIMER, PC AND ITS ATTORNEY, MICHAEL J. DURRSCHMIDT IN PARTICULAR, and now Eva Englehart, purported Chapter 7, Trustee, who acts with impunity and shows zero regard to the home involved here, has exacerbated African Americans' vulnerability because instead of preserving the home she agrees not to object to time-barred for $5,000.00. Therefore, the FDCPA's protections in the foreclosure context are a matter not just of consumer justice, but of racial justice. (Exhibit )

5.       The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. The United States Congress found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692 –1692p.

6.       The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. In reviewing an FDCPA complaint, courts "must evaluate any potential deception in the letter under an

3

unsophisticated or least sophisticated consumer standard, assuming that the Plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." McMurray v. ProCollect, Inc., 687 F.3d 665 (5th Cir. 2012). To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection practices and names a non-exhaustive list of certain per se violations of false and deceptive collection conduct. 15 U.S.C. § 1692e(1)-(16). Among these per se violations are: making false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. § 1692e(2)(A); making false representations concerning any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt, 15 U.S.C. § 1692e(2)(B); using a false representation or implication that any individual is an attorney or that any communication is from an attorney, 15 U.S.C. § 1692e(3); the false representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action, 15 U.S.C. § 1692e(4); the threat to take any action that cannot legally be taken or that is not intended to be taken, 15 U.S.C. § 1692e(5); the false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer, 15 U.S.C. § 1692e(7); the use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval, 15 U.S.C. § 1692e(9); the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10); and the false representation or implication that documents are legal process, 15 U.S.C. § 1692e(13).

7.    To prohibit unconscionable and unfair practices, the FDCPA at 15 U.S.C.

4

§ 1692f, outlaws the use of unfair or unconscionable means to collect or attempt to collect any debt and names a non-exhaustive list of certain per se violations of unconscionable and unfair collection conduct. 15 U.S.C. §§ 1692f (1)-(8); e.g., 5 U.S.C. § 1692f(6)(A)Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property there is no present right to possession of the property claimed as collateral through an enforceable security interest.

8.      To prohibits debt collectors from bringing or threatening to bring legal action to collect a time-barred debt, the FDCPA was Amended Effective November 30, 2021, by New Regulation F codified at 12 C.F.R. § 1006.26(b).

9.      The Act provides that a debt collector must not bring or threaten to bring legal action against a consumer to collect a time-barred debt. However, this paragraph (b) does not apply to proofs of claim filed in connection with a bankruptcy proceeding. See 12 C.F.R. § 1006.26(b). The Bureau reasoned that §1006.26(b) uses the term "legal action" and noted in Midland Funding, LLC v. Johnson, 137 S. Ct. 1407 (2017), the U.S. Supreme Court held that filing a proof of claim. on a time-barred debt in a bankruptcy proceeding and nothing more does not violate the FDCPA sections 807 or 808; because such claims are subject to disallowance by the bankruptcy trustee. A violation of this prohibition is a violation of the FDCPA, and successful litigants can recover actual and statutory damages and attorney fees. The prohibition on filing or threatening to file legal actions on a time-barred debt is consistent with existing FDCPA law that reaches the same conclusion.

10.      Many federal courts have issued decisions holding that suing, or even collecting (without a suit), on time-barred debt may violate the FDCPA under a variety of theories, such as collection under such circumstances is unconscionable (15 U.S.C. § 1692f), is neither authorized, nor permitted by law (id.), or is misleading in various ways (§ 1692e(2), § 1692e(5) and § 1692e(10)).

11.      And a lawyer can satisfy that definition if his principal business purpose

is mortgage foreclosure or if he 'regularly' performs this function." Glazer v. Chase Home Fin. LLC, 704 F.3d 453, 464 (6th Cir. 2013); see also Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 376 (4th Cir. 2006) (rejecting argument that a debt ceased to be a debt under the FDCPA once foreclosure proceedings were commenced and holding that defendant attorney's "actions surrounding the foreclosure proceeding were attempts to collect that debt"); Kaltenbach v. Richards, 464 F.3d 524, 529 (5th Cir. 2006) (subjecting attorney defendant to general requirements of FDCPA in action involving foreclosure, explaining that "a party who satisfies § 1692a(6)'s general definition of a 'debt collector' is a debt collector for the purposes of the entire FDCPA even when enforcing security interests"); Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1217 (11th Cir. 2012) (holding that non-judicial foreclosure actions fell within the general definition of debt collection under the FDCPA; "The fact that the letter and documents relate to the enforcement of a security interest does not prevent them from also relating to the collection of a debt within the meaning of § 1692e."); cf. Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227, 234 (3d Cir. 2005) (finding attorney defendants' actions of filing suit to enforce a lien on plaintiff's property fell within the general definition of debt collection). The Federal Trade Commission has similarly suggested in a commentary that the entire FDCPA. Glazer v. Chase Home Finance LLC, 704 F.3d 453 (6th Cir. 2013) (Holding that all "mortgage foreclosure is debt collection" for the FDCPA)

12.     The TDCA, like the FDCPA, prohibits debt collectors from using deceptive, coercive, threatening, abusive, and other repugnant practices to collect a consumer debt. Tex. Bus. & Com. Code Ann § 17.50; Cushman v. GC Services, L.P., 397 Fed. Appx. 24 (5th Cir. 2010) (discussing the "tie-in" provision between the TDCA and Deceptive Trade Practices Acts). Plaintiffs, on behalf of themselves and all others similarly situated, seek statutory damages, actual damages, injunctive relief, attorney fees, costs, and all other relief, equitable or legal, as deemed appropriate by this Court,

under the FDCPA, TDCA, and all other common law or statutory regimes.

13.     This case involves an obligation, or an alleged obligation, primarily for

personal, family, or household purposes, and arising from a transaction or alleged

transaction. As such, this action arises out of "consumer debt" as that term is defined

by Tex. Fin. Code § 392.001(2)

14.     The plaintiffs brought this lawsuit against the defendants for filing a

fraudulent and misrepresentation of their proof of claim with the tolling agreement

attached as Exhibit 7, as the culprit in an attempt to pass an invalid, unenforceable,

and time barred as valid and enforceable; in furtherance of the fraud for filing legal

actions, or even collecting (without a suit), on time-barred debt may violate the FDCPA

under a variety of theories, such as collection under such circumstances is

unconscionable (15 U.S.C. § 1692f), is neither authorized, nor permitted by law (id.), or

is misleading in various ways (§ 1692e(2), § 1692e(5) and § 1692e(10)); including 12

CFR 1006.34 and 12 CFR 1006.26(b)

### A. THE SUBJECT DEBT IS TIME-BARRED BECAUSE THE DEED OF TRUST, THE MORTGAGE NOTE, AND THE TOLLING AGREEMENT WERE VOID AB INITIO ON FEBRUARY 3RD 2021

### OR

### IN THE ALTERNATIVE ON AUGUST 12th, 2021 EITHER WAY THE PROOF OF CLAIM IS TIME-BARRED

15.     The case stems from a Balloon Note executed by Diogu Kalu Diogu 11,

the Borrower, in the original principal amount of $420,000.00 and payable to Green

Bank, N.A. (the *"Original Lender')* as Payee dated July 29, 2011. (Exhibit 1)

16.     Deed of Trust dated July 29, 2011, securing the Balloon Note and

recorded in the Office of the County Clerk of Fort Bend County, Texas on August 9,

2011, under Clerk's File No. 2011077666; and recorded in the Office of the County

Clerk of Fort Bend County, Texas on August 3, 2011, under Clerk's File No.

2011077667. (Exhibit 2)

17.    And the Real Estate Extension Letter Agreement dated August 3, 2016, by Diogu Kalu Diogu, II recorded in the Office of the County Clerk of Fort Bend County, Texas on November 2, 2016, under Clerk's File No. 2016122950, extending the maturity date of the note and deed of trust to February 3rd, 2017. (Exhibit 3)[4]

18.    On February 3rd, 2017, Plaintiff defaulted[5] on the balloon note because Green Bank NA, violated the Dodd-Frank Act's ATR/QM requirement, and the balloon payment was material to the default. (Exhibit 3)

19.    On or about January 01st, 2019, Veritex Community Bank, became a successor of Green Bank NA., by merger.[6]

20.    On or about December 3rd, 2019, on information and belief to avoid an expensive TILA violation litigation, the parties agreed to a Confidential settlement agreement that modified the original loan document. (Exhibit 4)[7]

21.    The agreement stated in the relevant part that "on or before March 31, 2020, Diogu Parties will pay or caused to be paid to **Veritex $250,000** 1n good funds ("Settlement Payment") in exchange for termination of the Note and release of the

---

[4] The maturity date was extended to February 3rd, 2017 by Green Bank

[5] Specifically, it was undisputed from the record then that the Bank's ATR/QM violation was material to the borrower's default, on the balloon note on the maturity date when the final Note's balloon payment of about $370,000.00 was due on February 3rd, 2017 because on or about September 2017, it was determined by undisputed evidence on the record or by omission in the loan document and the disclosure statements showed that the Bank in making the loan violated 15 USC § 1639c(a)(1); (4)(b)(A)(ii), 12 C.F.R. § 1026.43(c)(3); (4) & (5)(ii) and Appendix Q, for not verifying the borrower's income using reasonably reliable third-party records as required under 12 C.F.R. § 1026.43(c)(2), (3) & (4).And in making the balloon note, the loan document and the disclosure statement by omission on the record showed that the bank failed to use reasonably reliable third-party records in the calculation of the borrower's ability to make the balloon payment itself before financing the 60-month fixed balloon note[5] in violation of 12 C.F.R. § 1026.43(c)(3); (4) & (5)(ii).

[6] Veritex became the successor to Green Bank NA, by merger. URL: https://ir.veritexbank.com/news-releases/news-release-details/veritex-holdings-inc-completes-acquisition-green-bank-and-now-0, visited on 9/17/2022

[7] The Settlement payment was subsequently modified by agreement of the parties and made payable as proceed from the sale of Diogu's 4726 Gainsborough Drive, Brookshire, Texas 77423 that was scheduled before September 16th, 2021. *The agreement stated in the relevant part that "on or before March 31, 2020, Diogu Parties will pay or caused to be paid to Veritex $250,000 1n good funds ("Settlement  Payment") in exchange for termination of the Note and release of the Deed of Trust" (settlement payment") and Veritex's right to foreclose on the property,* (**tolled actions**) collectively known as the **MODIFIED LOAN DOCUMENT**, (Exhibit 3. Pp. 2, and Exhibit 4, pp#1) This agreement was part of the **MODIFIED LOAN DOCUMENT** and was pending at the time Lakeland allegedly bought the lien on June 10th, 2021.

Deed of Trust" (**settlement payment**") and Veritex's right to foreclose on the property. (Exhibit 4)

**22.**     However, on or about March 20th, 2020 because of Covid-19 and related Government shutdowns, it became impossible to perform the Confidential Settlement Agreement.

**23.**     As a consideration to toll running of the statute of limitation for 9 months tolling agreement[8] Brian Clark on behalf of Veritex Community Bank agreed to modify the loan document to $250,000.00 payable as a part of the proceeds from the sale of the Diogu house located 4726 Gainsborough Drive, Brookshire, Texas 77423 in return for a tolling agreement.[9] (Exhibit 5)

24.     In drafting the tolling agreement, to make it clear, and unambiguous and to exclude nonsignatory to the tolling agreement expressly stated in relevant part that: "This Tolling Agreement shall be binding upon the Parties hereto and their successors". (Exhibit 5)

25.     For further clarity, and to clear any ambiguity the parties used Veritex's merger with Green Bank, NA, as the definition of "Successor"[10].

26.     Furthermore, on or about June 10th, 2021, the date of the sale, Veritex Community Bank, as shown in the Alonge, again confirmed the definition of the successor, Veritex was a successor to Green Bank, NA, and Lakeland West 41, LLC was

---

[8] However, as a result of the emergence of covid 19 and the government shutdown, the parties agreed that the confidential Settlement Agreement has become impossible to perform, the parties further agreed in their correspondence during covid between Veritex Community Bank's attorney and Diogu to a Tolling Agreement, Exhibit 4) which further **MODIFIED THE LOAN DOCUMENT** making the settlement payment of the **$250,000,0** stated in the confidential Settlement agreement to be paid as proceeds from the sale of the house. Such a sale was pending on June 10th, 2021, and the sale was scuttled by the sale of the loan document to Lakeland West 41, LLC..

[9] However, as a result of the emergence of covid 19 and the government shutdown, the parties agreed that the confidential Settlement Agreement has become impossible to perform, the parties further agreed in their correspondence during covid between Veritex Community Bank's attorney and Diogu to a Tolling Agreement, Exhibit 4) which further **MODIFIED THE LOAN DOCUMENT** making the settlement payment of the **$250,000,0** stated in the confidential Settlement agreement to be paid as proceeds from the sale of the house. Such a sale was pending on June 10th, 2021, and the sale was scuttled by the sale of the loan document to Lakeland West 41, LLC..

[10] Veritex became the successor to Green Bank NA, by merger. URL: https://ir.veritexbank.com/news-releases/news-release-details/veritex-holdings-inc-completes-acquisition-green-bank-and-now-0, visited on 9/17/2022

just an assignee. The sale was without recourse, representations, or warranties of any

kind. (Exhibit 6)

**B. ON JUNE 30TH, 2021 VERITEX COMMUNITY BANK, NOTIFIED THE PLAINTIFF THAT THE TOLLING AGREEMENT HAS BEEN VOIDED IN THE SALE OF THE LOAN AGREEMENT TO LAKLAND WEST 41, LLC AND I OWE THE ORIGINAL LOAN AND THAT THEY CAN FORECLOSE AT ANYTIME**

27.     On or about June 30th, 2021, in a letter from Benjamin Allen, an

attorney, for Lakeland West 41, LLC., admitted that the tolling agreement, which

prevented Veritex Bank from foreclosing the property did not bind Lakeland because

in selling the loan document to Lakeland, Veritex Community Bank nullified, any prior

correspondence, (which included the tolling agreement) from Veritex Community

Bank, its agents, or representatives, concerning the indebtedness. (Exhibit 7)

28.     As a result of that letter, Lakeland immediately pursued a foreclosure

sale, sometime on June 30th, 2021 (Exhibit 7) which caused Plaintiff to lose a pending

contract for the sale of the house. (Exhibit 8)

29.     On information and belief, by nullifying and voiding the tolling

agreement ab initio,  Benjamin Allen, Veritex Community Bank, and Lakeland West

41, LLC knew or should have known that without the tolling agreement, the loan

document had become void and invalid ab intio. Because it is well established that the

4 year-year, the statute of limitation ran on the Loan document for all purposes on

February 3rd, 2021.

30.     On information and belief with the tolling agreement, void ab intio, on

June 10th, 2021, purchase date, Lakeland West 41, LLC's, "real property lien and power

of sale to enforce the real property lien become void on February 3rd, 2021. Rose v.

Select Portfolio Servicing, Inc., 945 F.3d 226, 229 (5th Cir. 2019). See also, Section

16.035(a), (b), (d), and (g)(2) and section 16.004(a)(3) of the Texas Civil Practice and

Remedies Code.

**ON THE ALTERNATIVE ASSUMING THE TOLL AGREEMENT SURVIVED THE PURCHASE WHICH IT DID NOT THE FOUR-YEAR**

**STATUTE OF LIMITATION RAN ON 08/12/2021 TOLLING
AGREEMENT BECAME MOOT ON JUNE 30TH, 2021 FOLLOWING
LAKELAND'S RESUMPTION OF THE FORECLOSURE PROCESS**

31.    It is well established that a nonjudicial foreclosure is a three (3) step legal action culminating in the foreclosure sale of the property. Steps leading to the foreclosure sale are described in the deed of trust and Section 51.002 of the Texas Property Code.

32.    Let's say on the alternative, that the tolling agreement bound Lakeland West 41, LLC until it breached it when it took the first foreclosure step, i.e., the 20-day notice to cure sent out on June 30th, 2021.  (Exhibit 7)

33.    Followed immediately by the Second step, when the lender or mortgage servicer requests the trustee designated in the deed of trust to sell the property appointed on August 13th, 2021. (Exhibit 9)

34.    Thirdly, the trustee began the process by giving 21-day advance notice of the sale by posting, sending, and filing the various notifications culminating in a sale on September 7th, 2021. (Exhibit 10)

35.    Based on the alternative scenario above, instead of February 3rd, 2021, the limitation ran on August 12th, 2021 because the tolling agreement was lifted by Lakeland West 41 LLC on June 30th, 2021, and doing the math.

36.    On information and belief because the tolling agreement, became moot June 30th, 2021, when Lakeland West 41, LLC, posted the property for foreclosure, then the four years from accrual of the cause action, and the real property lien and power of sale to enforce the real property lien become void on **August 12th, 2021**. Rose v. Select Portfolio Servicing, Inc., 945 F.3d 226, 229 (5th Cir. 2019). See also, Section 16.035(a), (b), (d), and (g)(2) and section 16.004(a)(3) of the Texas Civil Practice and Remedies Code

37.    On or about November 2nd, 2021 the Plaintiff, Plaintiff filed for Chapter 13 bankruptcy later converted to chapter 7, but maintaining the November 2nd, 2021

filed Bankruptcy after a brief motion practice, which was either nonsuited or dismissed without prejudice, and based on continued threat of foreclosure by Lakeland West 41, LLC.

38.    On or about November 17th, 2021, Michael J. Durrschmidt; of Hirsch & Westheimer, PC appeared as counsel for Lakeland West 41, LLC in the bankruptcy court.

39.    On information and belief on November 17th, 2021, Michael J. Durrschmidt because aware that real property lien or the debt had become time-barred because the tolling agreement between Veritex and Diogu was void ab initio, to Lakeland because:

a. He was immediately made aware of the expressed term of the tolling agreement excluding Lakeland a beneficiary of the agreement. or the June 30th, 2021 letter nullifying the agreement to Lakeland West, 41, LLC.

b. As the documents supporting his proof of claim, show on information and belief he understood by the expressed term of the tolling agreement that the proof of claim was time-barred;

a. Because the relevant, clear, and unambiguous term of the tolling agreement was: "**This Tolling Agreement shall be binding upon the Parties hereto and their legal successors**".

b. Michael J. Durrschmidt; of Hirsch & Westheimer, PC who markets himself as one of the top-rated Bankruptcy attorneys in Houston, TX, knew when he filed his proof of claim that  Lakeland West 41, LLC was not a successor to Veritex Community Bank as such he was not bound by the tolling agreement;

c. Michael J. Durrschmidt; of Hirsch & Westheimer, PC who markets himself as one of the top-rated Bankruptcy attorneys in Houston, TX, also knew that under Texas law, Corporations and other business entities do not have heirs, but they can have successors and the "successor" of a business entity is not an assignee, but rather refers to rights and obligations transferred by merger, consolidation, or other legal successions. *Broadway Nat'l Bank v. Yates Energy Corp.*, 631 S.W.3d 16 (Tex. 2021)(*Enchanted Ests. Cmty. Ass'n, Inc. v. Timberlake Improvement Dist.,* 832 S.W.2d 800, 802 (Tex. App.-Houston [1st Dist.] 1992, no writ)).

d. Michael J. Durrschmidt; of Hirsch & Westheimer, PC who markets himself as one of the top-rated Bankruptcy attorneys in Houston, Tx, also knew that a person who is not a party to a contract has no standing to enforce it because a third party must first demonstrate

that it is an intended beneficiary under the parties' agreement. <u>Pelletier v. InterBank</u>, CIVIL ACTION NO. 6:19-CV-0089 (S.D. Tex. May. 20, 2020) (citing First Bank v. Brumitt, 519 S.W.3d 95, 102 (Tex. 2017). Stine v. Stewart, 80 S.W.3d 586, 589 (Tex. 2002).

e.   Michael J. Durrschmidt; of Hirsch & Westheimer, PC who markets himself as one of the top-rated Bankruptcy attorneys in Houston, T*x.*, also, knew that "[A] third party may recover on a contract made between other parties only if the" third party is a third-party beneficiary—i.e., "if the parties intended to secure some benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit. That did not happen here. " First Bank v. Brumitt, 519 S.W.3d 95, 102 n.14 (Tex. 2017) (quoting Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc., 348 S.W.3d 894, 897-99 (Tex. 2011)). BCR *A*viation, LLC v. Texas Gyro, Inc., CASE NO. 3:18-CV-2899-S (N.D. Tex. Jun. 11, 2019)(Smith Int'l., Inc. v. Egle Grp., LLC, 490 F.3d 380, 387 (5th Cir. 2007) (alteration in original)(quoting Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C., 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).

f.    Finally, Michael J. Durrschmidt; of Hirsch & Westheimer, PC who markets himself as one of the top-rated Bankruptcy attorneys in Houston, Tx, knew under Texas law, all doubts regarding the parties' intent must be resolved against conferring third-party beneficiary status. First Bank, 519 S.W.3d 95, 103 (Tex. 2017) (citation omitted). "It is bedrock Texas law that the third party to a contract may only recover on a contract if the contracting parties intended to secure some benefit to that third party and entered into the contract directly for the third party's benefit. Maxotech Sols. v. Pamten Inc., CIVIL ACTION NO. 3:20-CV-1387-S (N.D. Tex. Nov. 3, 2020), See also. Hiser v. NZone Guidance, L.L.C., 799 Fed.Appx. 247 (5th Cir. 2020)

40.   Michael J. Durrschmidt; of Hirsch & Westheimer, PC who markets himself as one of the top-rated Bankruptcy attorneys in Houston, T*x., knows* that without the tolling agreement, his proof of claim is time-barred as a matter of law.

41.   Michael J. Durrschmidt; of Hirsch & Westheimer, PC who markets himself as one of the top-rated Bankruptcy attorneys in Houston, T*x*, made a calculated decision to include, Exhibit 7, Exhibit 5 herein, as part of its proof of claim, to confuse Plaintiff, the Court, and Chapter 7, trustee to belief at first brush, that the proof of claim.

42.    Because it is time it is subject to disallowance by the trustee. All the pleading filed by the Lawyer defendants under this cause violates 12 CFR 1006.26(b) and other violations enumerated under 15 U.S.C. §§ 1692–1692p.

43.    Further, Michael J. Durrschmidt; of Hirsch & Westheimer, PC who markets himself as one of the top-rated Bankruptcy attorneys in Houston, T*x*, in filing his fraudulent proof of claims knowingly omitted Exhibits, 7, 9 & 10), an indication the is deception was calculated and intentional violation of 12 CFR 1006.26(b) and other violations as enumerated under 15 U.S.C. §§ 1692–1692p.

44.    The sophistication of Michael J. Durrschmidt; of Hirsch & Westheimer, PC's deception points to the perversive nature of his abusive, deceptive, and unfair debt collection practices by many debt collectors," 15 U.S.C. § 1692, in 1978, Congress enacted the Fair Debt Collection Practices Act (FDCPA), codified in 15 U.S. Code Subchapter V.

45.    The FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." Rosello v. Chauncey, 8:19-cv-3027-CEH-CPT (M.D. Fla. Mar. 31, 2022)( Citing Heintz v. Jenkins, 514 U.S. 291, 299 (1995) ("In ordinary English, a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts."); see Miljkovic v. Shafritz & Dinkin, P.A., 791 F.3d 1291, 1298 (11th Cir. 2015) (explaining that Heinz recognized that the FDCPA applied to the litigating activities of debt-collector lawyers and that the holding "aligned" with the FDCPA's definition of "debt collector").

46.    The plaintiff seeks punitive damages because of the sophisticated nature of this abuse.

47.    Whether the conduct qualifies as unfair or unconscionable is assessed objectively from the point of view of the 'least sophisticated consumer.' " Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1308 (11th Cir. 2015). The crux of Plaintiff's

claim is his assertion that Defendant knew he was not responsible for the Zelda debt, and knew the statute of limitations had expired when it filed suit against him in July 2018., Reddick v. Capouano, Beckman, Russell & Burnett, LLC, CASE NO. 2:19-cv-512-JTA (WO) (M.D. Ala. Mar. 18, 2021)

48.     On information and belief, in determining punitive damages, the court must consider the nature, frequency, and persistency of the violations and the extent to which they were intentional, this case qualifies for an award of punitive damages above $100,000,000.00 ($100 Million) dollars shall be shown below.

### FORECLOSURE FRAUD VIOLATION OF SECTION TWELVE OF THE TEXAS CIVIL PRACTICE & REMEDIES CODE

### 1. THE MORTGAGE SYSTEM

49.     In the most common residential lending scenario, there are two parties to a real property mortgage - the mortgagee, i.e., a lender, and the mortgagor, i.e., a borrower. When a mortgage lender loans money to a home buyer it obtains two documents: (1) a promissory note in the form of a negotiable instrument from the borrower and (2) a "mortgage" or "deed of trust"[11]  granting the mortgage lender a security interest in the property as collateral to repay the note.

50.     The mortgage, as distinguished from the note, establishes the lien on the property securing the repayment of the loan. For the lien to be perfected and inoculate the property against subsequent etfo1is by the mortgagor to sell the property or borrow against it, however, the mortgage instrument must be tiled in the deed records of the county in which the property is located. See section, 16.035(g) Tex. Civ. P. & Rem. Code.

---

[11] The Deed of Trust creates a lien on the property - the title remains with the Borrower. The property reverts to the borrower when the lien is removed after all the payments have been made or when the four-year period after the accrual of the cause expires, because the real property lien and power of sale to enforce the lien become void. § 16.035(d). *Rose v. Select Portfolio Servicing, Inc.*, 945 F.3d 226, 229 (5th Cir. 2019) *See also, Taylor v. Brennan,* 621 S.W.2d 592, 593 (Tex. 1981);

51.     For over 100 years, Texas law has provided that the grantee or beneficiary of a deed of trust is the lender on the note secured by the deed of trust[12] so long as the debt exists, the "security will follow the debt," and the assignment of the debt carries with it the rights created by the deed of trust securing the note.[13]

52.     But, after four years from accrual of the cause action, "the real property lien and power of sale to enforce the real property lien become void. *Rose v. Select Portfolio Servicing, Inc.*, 945 F.3d 226, 229 (5th Cir. 2019).

### 2. THE DEED OF TRUST AND THE NOTE WERE VOID ON FEBRUARY 3RD, 2021 SEE SECTION 6.035(D)(G)(2) OF THE TEXAS PRACTICE AND REMEDY CODE.

53.     Plaintiff defaulted on the maturity date of February 3rd, 2017. Exhibit 3.

54.     Veritex Community Bank, as successor to Green Bank NA, had a promissory note (Exhibit 1) secured by a deed of trust in July 2011, known hereafter as the Strict Loan Documents totaling approximately, $420,000.00. (Exhibit 4)

55.     Sometime between December 3rd, 2019, and December 17th, 2020, numerous correspondences between Veritex Community Bank and Diogu, reached a tolling agreement that modified the Loan Document tolling any foreclosure for $250,000.00 payable to Veritex Community Bank as a proceed from the sale of 4726 Gainsborough Drive, Brookshire, Texas 77423. (Exhibit 5)

56.     On information and belief, on June 10th, 2021, as a condition to the sale of the loan documents to Lakeland West 41, LLC, Veritex Community Bank voided ab initio the tolling agreement and any prior correspondence from Veritex Community Bank, its agents, or representatives, concerning the indebtedness. (Exhibit 6)

57.     On information and belief, between June 2021 to the end of August 2021, on more than 3 occasions, Mr. Benjamin Allen, the then attorney for Lakeland, confess

---

[12] *See Lawson v. Gibbs,* 591S.W.2d292, 294 (Tex. Civ. App.-Houston [1st. Dist.] 1979, writ ref'd n.r.e.).

[13] A deed of trust in Texas creates a lien in favor of the lender; it does not operate as a transfer of title. This has been the law in Texas for more than a century. *See McLane v. Paschal,* 47 Tex. 365, 369 (1877); *see also Johnson v. Snell,* 504 S.W.2d 397, 399 (Tex. 1973).

and admitted to me that the tolling agreement, and any other agreements, were voided ab initio so that they can pursue a foreclosure immediately, which they did, and asked for the full amount due plus attorney fees, which he described as the strict compliance with loan documents.

58.    On information and belief without the tolling agreement, the loan document as of 2017 because void. See Tex. Civ. Prac. & Rem. Code Ann. § 6.035(d) On the expiration of the four-year limitations period, the real property lien and power of sale to enforce the real property lien become void; and according to section 16.035(g)(2), a real property lien includes the note,  deed of trust. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.035(g)(2) (Vernon 2002).

59.    As the first court appeal in *Woodside Assur. v. NK RESOURCES*, 175 S.W.3d 421 (Tex. 1st, Hou. App. 2005) once the statute of limitations passed on Woodside's real property lien, all remedies for enforcement of the lien was lost. With no remedy for enforcement, Woodside could not recover the excess proceeds.  See also, *Rose v. Select Portfolio Servicing, Inc.*, 945 F.3d 226, 229 (5th Cir. 2019)( After four years from accrual, "the real property lien and power of sale to enforce the real property lien become void.)

60.    On information and belief that under the Texas Property Code, the only party with standing to initiate a non-judicial foreclosure sale is the mortgagee, or the mortgage servicer acting on behalf of the current mortgagee." Nueces County v. Merscorp Holdings, Inc., Civil Action No. 2: 12-CV-00131 (S.D. Tex. July 3, 2013) (Miller v. Homecomings Financial, LLC, No. 4:11 cv 04416, 2012 WL 3206237, at *2 (S.D. Tex. Aug. 8, 2012) (citing Tex. Prop. Code §§ 51.0001(3), 51.0001(4), and 51.0025)) Miller v. Homecomings Fin., LLC, No. 4:11-CV-04416, 2012 WL 3206237, at *5 (S.D. Tex. Aug. 8, 2012).  *Washington v. JP Morgan Chase*, No. SA-11-CV-763-XR, 2013 WL 636054, at *8 (W.D. Tex. Feb. 20, 2013) (citation omitted); accord Tri-Cities Const., Inc., 523 S.W.2d at 430.

61.    On information and belief that Texas has long followed the common law rule which permits a debtor to assert against an assignee any ground that renders the assignment void or invalid." Routh, 2013 WL 427393, at *8 (quoting Miller v. Homecomings Fin., LLC, 881 F. Supp. 2d 825, 831 (S.D. Tex. 2012)).

62.    It would be an exercise in futility to reform a document creating a lien on real property when the lien is void and no power of sale to enforce it remains. The law does not require a futile act. *See City of Gladewater v. Pike*, 727 S.W.2d 514, 518 (Tex. 1987) (stating the equitable maxim that "a court should not require the doing of a useless thing")).

63.    On information and belief that without the power of sale, the substitute trustee sale is void and the Substitute trustee deed resulting from the sale is void ab intio. And is a fraud per se for recording a fraudulent lien.

### 3.   MORTGAGE RECORDATION IN TEXAS IS GOVERNED BY CHAPTER 12 OF THE TEXAS PROPERTY CODE. SECTION 12.001 OF THE PROPERTY

64.    Mortgage recordation in Texas is governed by Chapter 12 of the Texas Property Code. Section 12.001 of the Property Code provides, in part, "An instrument concerning real or personal property may be recorded if it has been acknowledged. sworn to with a proper jurat, or proved according to law."

65.    As demonstrated by the criminal and civil penalties for filing false or deceptive real estate liens, Texas public policy favors a reliable functioning public recordation system to avoid destructive breaks in the title, confusion as to the true identity of the holder of a note, fraudulent foreclosures, and uncertainty as to title when a home is sold. See Section 12.002 of the Texas Civil Practice & Remedies Code.

66.    Concerning the assignment of a mortgage, "[a] void contract of assignment confers no right to foreclose under the deed on the purported assignee.) See *CA Partners v. Spears*, 274 S.W.3d 51 (Tex. App. 1st, Hou. 2008)(..we would still conclude that the trial court properly refused to reform the Deed. CA Partners's lien is

void and it has no power of sale to enforce the lien. *See* TEX. CIV. PRAC. REM. CODE

§ 16.035(d)(g)(2)

67.    On information and belief, the defendants knew or should have known the Substitute trustee deed is void ab initio, because, the deed of trust was void on February 3rd, 2021, or in the alternative on August 12th, 2021 the power of sale was void ab intio.

68.    Therefore, the foreclosure was void ab initio and the deed created any right to Lakeland West 41, LLC.

## II.    JURISDICTION AND VENUE

69.    This action arises under and is brought pursuant to the FDCPA as Amended Effective November 30, 2021, by New Regulation F Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1692(k)(d), 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. § 1367.

70.    Venue is proper in this Court under 28 U.S.C. §1391 as Defendants conduct business in the Southern District of Texas and a substantial portion of the events or omissions giving rise to the claims occurred within the Southern District of Texas. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201, 2202.

## III.    PARTIES

*A.*    **PLAINTIFFS**

71.    Plaintiffs are natural persons and residents of the State of Texas and are "Consumers" as defined by 15 U.S.C. §1692(a)(3) and §1692(c)(d)

72.    At all times relevant to the factual allegations of this Complaint Plaintiffs were citizens of the state of Texas and resided in, the City of Brookshire, Fort Bend County, Texas.

*B.*    **LAKELAND WEST CAPITAL 41, LLC, DEFENDANTS**

73.    At all times relevant to the factual allegations of this Complaint, Lakeland

West Capital 41, LLC. Was and, on information belief, is registered to transact business in the State of Texas. The defendant is a corporation organized under the laws of the state of Texas.

74.    On information and belief, a principal business location of Lakeland West Capital 41, LLC is 5002 Lakeland Cir, Waco, TX 76710, and may be served with process By serving his registered agent, LAKELAND WEST CAPITAL, LLC., 5020 LAKELAND CIRCLE, STE A, WACO, TX, 76710, USA.

75.    Adam McKee is a natural person and the president and manager of Lakeland West Capital 41, LLC

76.    At all times relevant to the factual allegations of this Complaint, **Adam McKee** was a citizen of and resided in, the City of Waco, McLennan County, Texas and may be served with process at, 5020 LAKELAND CIRCLE, STE A, WACO, TX, 76710, US

77.    Lakeland West Capital 41, LLC, Defendants are third-party debt collectors specializing in the collection of debts related to defaulted home mortgages and other consumer debts.

78.    The defendants acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers at all times relevant to this instant action.

79.    Upon information and belief, Defendants used the instrumentality of interstate commerce or the mails in engages in business the principal purpose of which is the collection of any debts" or that "regularly" collect or attempt to collect debts due or asserted to be owed as in this case or due another.

*C.*    **FORECLOSURE NETWORK OF TEXAS DEFENDANTS**

80.    Defendants, Jeff Leva; Sandy Dasigenis; Lillian Poetker are natural people.

81.    At all times relevant to the factual allegations of this Complaint, JEFF

LEVA was a citizen of Texas, resided in, the City of Sugarland, Fort Bend County, Texas, and was an employee of Foreclosure Network of Texas, whose address and place of service of process is 10406 Rockley Rd, Houston, Texas, 77099, United States

82.    At all times relevant to the factual allegations of this Complaint, SANDY DASIGENIS was a citizen of Texas, resided in, the City of Sugarland, Fort Bend County, Texas, and was an employee of Foreclosure Network of Texas, whose address and place of service of process is 10406 Rockley Rd, Houston, Texas, 77099, United States

83.    At all times relevant to the factual allegations of this Complaint, LILLIAN POETKER was a citizen of and resided in, the City of Sugarland, Fort Bend County, Texas, and was an employee of Foreclosure Network of Texas, whose address and place of service of process are 10406 Rockley Rd, Houston, Texas, 77099, United States In the past year, the foreclosure network defendants have been employed by Lakeland and/or HIRSCH & WESTHEIMER, PC., in an attempt to collect this instant debt.

84.    Over the past few years, foreclosure network defendants – in their employment with Lakeland and/or HIRSCH & WESTHEIMER, PC - have regularly attempted to collect debts on behalf of Lakeland and another debt collector.

85.    The foreclosure network defendants are "debt collectors," as defined under the FDCPA under 15 U.S.C. § 1692a(6)

86.    Upon information and belief, Defendants used the instrumentality of interstate commerce or the mails in engages in business the principal purpose of which is the collection of this or any debts" or that "regularly" collect or attempt to collect debts due or asserted to be owed as in this case or due another.

*D.*    **LAWYER DEFENDANTS**

87.    Defendant, HIRSCH & WESTHEIMER, PC, is a domestic corporation. The registered agent is Lee E Herman, and may be served with process at 1415 Louisiana, 36th Floor Houston, TX 77002 USA

88.     On information and belief, HIRSCH & WESTHEIMER, PC. is a debt collector Lawfirm with a principal business location in the City of Houston, Harris County, Texas.

89.     Upon information and belief, HIRSCH & WESTHEIMER, PC.  is a company that uses the mail, telephone, and facsimile and regularly engages in business the principal purpose of which is to attempt to collect debts alleged to be due another.

90.     Over the past few years, HIRSCH & WESTHEIMER, PC has regularly attempted to collect debts on behalf of Lakeland, and another debt collector.

91.     HIRSCH & WESTHEIMER, PC is a "debt collector," as defined under the FDCPA under 15 U.S.C. § 1692a(6).

92.     At all times relevant to the factual allegations of this Complaint, Kim E. Lewinski ESQ. was licensed as an attorney at law of the State of Texas, having been admitted on November 06th, 2015, and holding a ***Bar Card Number:*** 24097994

93.     On information and belief, a principal business location of Kim E. Lewinski Esq. is the City of Houston, Harris County, Texas.

94.     Kim E. Lewinski Esq. is a collection attorney employed by HIRSCH & WESTHEIMER, PC, whose place of business is 1415 Louisiana, 36th Floor Houston, TX 77002 USA.

95.     Over the past year, Kim E. Lewinski Esq – in her employment with HIRSCH & WESTHEIMER, PC - has regularly attempted to collect debts on behalf of Lakeland and another debt collector.

96.     Kim E. Lewinski is a "debt collector," as defined under the FDCPA under 15 U.S.C. § 1692a(6)

97.     At all times relevant to the factual allegations of this Complaint, BRADLEY E. RAUCH ESQ was licensed as an attorney at law of the State of Texas, having been admitted on November 08th, 1985 and holding Bar Card

98.    On information and belief, a principal business location of BRADLEY E. RAUCH ESQ. is the City of Houston, Harris County, Texas

99.    Bradley E. Rauch Esq. is a collection attorney employed by HIRSCH & WESTHEIMER, PC, whose place of business is 1415 Louisiana, 36th Floor Houston, TX 77002 USA.

100.    Over the past few years, Bradley E. Rauch Esq – in his employment with HIRSCH & WESTHEIMER, PC - has regularly attempted to collect debts on behalf of Lakeland and another debt collector.

101.    Bradley E. Rauch Esq is a "debt collector," as defined under the FDCPA under 15 U.S.C. § 1692a(6)

102.    At all times relevant to the factual allegations of this Complaint, MICHAEL J. DURRSCHMIDT was licensed as an attorney at law of the State of Texas, having been admitted on November 05th, 1982 and holding *Bar Card Number:* 06287650

103.    On information and belief, a principal business location of MICHAEL J. DURRSCHMIDT  is the City of Houston, Harris County, Texas

104.    MICHAEL J. DURRSCHMIDT, is a collection attorney employed by HIRSCH & WESTHEIMER, PC, whose place of business is 1415 Louisiana, 36th Floor Houston, TX 77002 USA.

105.    Over the past few years, MICHAEL J. DURRSCHMIDT, – in his employment with HIRSCH & WESTHEIMER, PC - has regularly attempted to collect debts on behalf of Lakeland and another debt collector.

106.    MICHAEL J. DURRSCHMIDT, is a "debt collector," as defined under the FDCPA under 15 U.S.C. § 1692a(6)

107.    Hirsch & Westheimer, PC, Kim E. Lewinski, Bradley E. Rauch Esq, and Michael J. Durrschmidt, are hereby collectively referred to as the "LAWYER

DEFENDANTS)

108.    Upon information and belief, Defendants used the instrumentality of interstate commerce or the mails in engages in business the principal purpose of which is the collection of this or any debts" or that "regularly" collect or attempt to collect debts due or asserted to be owed as in this case or due another.

109.    Upon information and belief, the lawyer defendants knew or should have known that the debt was time-barred since February 3rd, 2021, or on the alternative on August 12th, 2021 based on the record publicly available and those provided to them by Lakeland in the case.

110.    Upon information, the lawyer know should that the proof of claim is time-barred, but they are counting on the capability to corrupt the willing Eva Englehart not to object to their time-barred proof of claim a duty imposed on her by statute and the US Supreme Court in Midland Funding. (Exhibit 11)

## IV.    FACTUAL ALLEGATIONS

111.    Plaintiffs repeat reiterate and incorporate the allegations contained in paragraphs above herein with the same force and effect as if the same were set forth at length herein

**112.**    This action stems from the Defendants' attempt to collect upon a purportedly defaulted and time-barred home mortgage debt ("subject debt") said to be owed by Plaintiff.

113.    Strict Liability applies to Debt Collectors Attempting to Collect a Time-Barred Debt Through Litigation. 12 CFR 2006.26(b)

114.    The plaintiffs are "consumers" as that term is defined by §1692a(3) and §1692c(d) of the FDCPA.

115.    The plaintiffs are "consumers" as that term is defined by §392.001(1) of the TDCA.

116.    Plaintiff incurred an alleged debt for goods and services used primarily

for personal, family, or household purposes.

117.    The Alleged Debt(s) is a "debt" as that term is defined by §1692a(5) of the FDCPA.

118.    The Alleged Debt(s) is a "consumer debt" as that term is defined by §392.001(2) of the TDCA.

119.    Due to circumstances beyond Plaintiff's control, he defaulted on the debt on February 3rd, 2017 also the maturity date of the note.

120.    The four-year statute limitation ran on the loan documents or the real property lien on February 3rd, 2021.

121.    Sometime on June 10th, 2021, the debt was purchased by Lakeland West 41, LL.C., by Veritex Community Bank, a successor to Green Bank, NA (Exhibit 12)

122.    Before June 10th, 2021, Plaintiff had a nontransferrable tolling agreement with Veritex that was discussed in detail above and no third party beneficiary was intended by the parties.

123.    It is my understanding the above facts were made clear to Lakeland and he agreed to buy the loan anyway.

124.    As per that tolling agreement, and based on the Texas Supreme court's well-reasoned opinion in First Bank v. Brumitt, 519 S.W.3d 95, 102 (Tex. 2017) the tolling agreement became void ab initio, on June 10th, 2021, on that day the loan document became void by operation of law under Texas law, on February 3rd, 2021.

125.    The tolling agreement became void since Lakeland was an assignee, not a successor because in another well-reasoned, opinion in *Broadway Nat'l Bank v. Yates Energy Corp*., 631 S.W.3d 16 (Tex. 2021)(Citing *Enchanted Ests. Cmty. Ass'n, Inc. v. Timberlake Improvement Dist.,* 832 S.W.2d 800, 802 (Tex. App.-Houston [1st Dist.] 1992, no writ))(the Texas Supreme court, held, "Corporations and other business entities do not have heirs, but they can have successors and the "successor" of a business entity is not an assignee, but rather refers to rights and obligations

transferred by merger, consolidation, or other legal succession").

126.    Each defendant is regularly engaged in the collection of debts.

127.    Each Defendant regularly collects or attempts to collect debts alleged to be owed to others.

128.    The principal purpose of Lakeland West 41, LL.C is the collection of debts.

129.    On information and belief that Lakeland West Capital 41, LLC, is a debt collector[14], who buys defaulted notes, deeds of Trusts, time-barred debts, or securities for pennies to the dollar in high-risk big return investments venture.[15]

130.    He bought the loan documents about four months after the statutes of limitation ran on the debt which was February 3rd, 2021, a big risk, but he almost succeeded. He hired shroud lawyers, some of which will never practice as an advocate in any Court in any European country. Because to them, it is about winning and not the law or morality.

131.    Upon information and belief, Defendant was made aware of the impact of that critical date, being the running of the statute of limitation, and agreed to purchase the debt without recourse, representations, or warranties of any kind.

132.    On information and belief, on June 10th, 2021, Defendant was made aware of the Confidential Settlement agreement and the tolling agreement between, Plaintiff and Veritex Community Bank modifying the loan document to $250,000.00 payable as proceeds from the sale of Plaintiff's homestead, and tolling agreement

---

[14] See *Long v. Pendrick Capital Partners II, LLC*, 374 F. Supp. 3d 515 (D. Md. 2019)(Holding that *Henson v. Santander, 137 S.Ct. 1718, 1721, 198 L.Ed.2d 177 (2017)*, courts across the country, including courts in Houston's Southern District of Texas, have found that debt buyers may qualify as debt collectors if their principal purpose is to collect debts. See e.g. , Barbato v. Greystone All., LLC , 916 F.3d 260, 261 (3d Cir. 2019) ; Hordge v. First Nat'l Collection Bureau, Inc. , No. 4:15-CV-1695, 2018 WL 3741979 at *5 (S.D. Tex. Aug. 7, 2018) ; McMahon v. LVNV Funding, LLC , 301 F.Supp.3d 866, 883 (N.D. Ill. 2018) ; Mitchell v. LVNV Funding, LLC , No. 2:12-CV-523-TLS, 2017 WL 6406594 at *2–7 (N.D. Ind. Dec. 15, 2017). Further, on at least one occasion, Defendant Pendrick, appearing as a defendant in another case, stipulated that it is a debt collector under the FDCPA's principal purpose prong.
[15] Lakeland West Capital sells office project in Arlington's I-20 commercial corridor.
https://rejournals.com/lakeland-west-capital-sells-office-project-in-arlingtons-i-20-commercial-corridor/

tolling foreclosure for all purposes until September 16th, 2021.

133.    On information and belief Lakeland did not like that arrangement and Veritex Community Bank on or about June 30th, 2021, the defendant persuaded the bank, to nullify all prior correspondence between the banks and its agents to restore the loan document to its December 03rd, 2019 amount owed, which was coined as "strict compliance to the Loan Documents".

134.    Amazingly, Lakeland West 41, LLC wants to eat his cake and have it too.

135.    On the same day, having nullified that tolling agreement Lakeland initiated the foreclosure proceeding on June 30th, 2021 with a foreclosure sale set for September 7th, 2021; when that failed, the defendant reset the foreclosure sale for November 2nd, 2021 causing Plaintiff to file for foreclosure.

136.    Upon information and belief, at all times during these proceedings, Lakeland and its attorney knew or should have known that the debt and their proof claim, were time-barred because they knew that having nullified the tolling agreement and initiated a foreclosure sale process before the expiration of the tolling period, the four-year statute of limitation ran on February 3rd, 2021 ab initio or at best on August 12th, 2021 being when the 4 years statute of, limitation ran from the time Lakeland materially breached the tolling agreement; being June 30th, 2021.

137.    Furthermore, this case has been a nightmare, I don't care about embarrassment, inconvenience, and further expense, but these people are so nasty, corrupting, and mean, their intimidating conduct caused me to have a stroke with a blood clot in my brain in front my 13-year children, let that sink in.

138.    As a single father, all these occurred in the presence of Plaintiff's 13-year children whom for over 6 days, were traumatized by the fear of possibly losing their father to Lakeland and its lawyers and causing them to be tardy in school for the first, they will never get a no-tardy school year forever because of Lakeland West 41, LLC and its attorneys, especially, Michael J. Durrschmidt.

139.    Since my stroke, in an attempt to collect on time-barred debt, the lawyer defendant, especially Kim Lewinski has filed over 68 legal actions in clear violation of 12 CFR 1006.26(b)

140.    On or about November 17th, 2021, Lakeland hired the HIRSCH & WESTHEIMER, PC

141.    On information and belief, the Lawyer Defendants are attorneys at the law of the State of Texas representing Lakeland West 41, LL.C in courts throughout the State of Texas.

142.    In attempting to collect debts, each Defendant uses the mail, telephone, the internet, and other instruments of interstate commerce.

143.    Sometime after, November 2nd, 2021, in an attempt to collect on the time-barred debt the Lakeland Defendants employed the services of HIRSCH & WESTHEIMER, PC., a collection law firm.

144.    On information and belief on or about November 17th, 2021 in an attempt to collect on the time-barred debt, Michael Durrschmidt, of HIRSCH & WESTHEIMER, PC filed a Notice of Appearance and Request for Notice on behalf of Lakeland West Capital 41, LLC.

145.    On information and belief, Michael Durrschmidt, of HIRSCH & WESTHEIMER, PC, knew that the tolling agreement was void because, in the conscience of guilt, he asked the Trustee in bankruptcy not to object to the proof of claims time-barred.[16]

146.    On information and belief, Michael Durrschmidt, of HIRSCH & WESTHEIMER, PC, knew that his proof of claim was time-barred from the beginning because in filing it he withheld (**Exhibits, 7, 9, 10**) which would lead to a common man to infer that the tolling agreement was in fact void.

147.    On or about November 30th, 2021, FDCPA was Amended Effective by

---

[16] This is an example of a corrupting influence, a win at all cost, a third world material..

New Regulation F, codified in 12 CFR 1006.

148.    On or about December 12th, 2021, Michael Durrschmidt, of HIRSCH & WESTHEIMER, PC, filed Lakeland West 41, LLC's proof of claim. (Exhibit 3)

149.    On information and belief, in the filing, the proof of claim, Michael Durrschmidt, of HIRSCH & WESTHEIMER, PC, fraudulently included the non-transferable tolling agreement between Diogu and Veritex Community Bank, as part of the document as of the proof of claim's, attached Exhibit 7, to make it appear that the statute of limitations on the loan document was tolled by association, without even reading the text of the tolling agreement. And most people don't like to read.

150.    On information and belief, Michael Durrshmidst, committed the fraud, to mislead the consumer, and the court into the belief that a tolling agreement was valid and an agreement between Diogu and Lakeland by association, because he knew that the Proof of claim was time-barred.

151.    On information and belief, the undisputed evidence here shows that the proof of claim is time-barred and Lakeland, knew this on June 10th, 2021, and Michael Durrschmidt, of HIRSCH & WESTHEIMER, PC, knew also as shown above.

152.    On or about February 2nd, 2022, in an attempt to collect on the time-barred debt, Michael Durrschmidt, of HIRSCH & WESTHEIMER, PC  filed a Response to Trustee's Motion to Dismiss and Joinder to Motion to Convert Case from Chapter 13 to Chapter 7.

153.    On or about February 2nd, 2022, in an attempt to collect on the time-barred debt, Michael Durrschmidt, of HIRSCH & WESTHEIMER, PC  filed an Objection to Confirmation of Plan Filed by Lakeland West Capital 41, LLC. To Plaintiff Amended Chapter 13 Plan.

154.    On or about February 17th, 2022, in an attempt to collect on the time-barred debt, Michael Durrschmidt, of HIRSCH & WESTHEIMER, PC  filed a Notice of Lakeland West Capital 41, LLC's Demonstrative for Conversion Hearing on February

17, 2022, at 11:00 a.m. (Related document(s):71 Motion to Convert Case from Chapter

13 to Chapter 7)

155.    On or about February 17th, 2022, in an attempt to collect on the time-

barred debt, Michael Durrschmidt, of HIRSCH & WESTHEIMER, PC  filed an

Objection Lakeland West Capital 41, LLC's Limited Objection to Debtor's Emergency

Application to Approve and Allow Sale of Homestead (related document(s):78 Motion

to Sell)

156.    On or about March 28th  in an attempt to collect on the time-barred debt,

Michael Durrschmidt, of HIRSCH & WESTHEIMER, PC  filed a Notice of Fair Debt

Collections Practices Act Letter. (Related document(s): Generic Order) Filed by

Lakeland West Capital 41, LLC.

157.    This collection letter was the first written communication Plaintiff

received from Defendant in connection with the subject debt post-petition of Chapter 7

Bankruptcy.

158.    The collection letter represents that the "Balance Due" on the subject

debt totaled $665,409.04 (Exhibit 14)

159.    However, the letter relates to residential mortgage debt as such is

governed by a Special rule for certain residential mortgage debt therefore was not in

compliance with 12 CFR § 1006.34(c)(5)

160.    On information and belief, Section 1006.34(c)(5) provides that, for

residential mortgage debt, if a periodic statement is required under Regulation Z, 12

CFR 1026.41, at the time a debt collector provides the validation notice, a debt

collector need not provide the validation information required by § 1006.34(c)(2)(vi)

through (viii) if the debt collector provides the consumer, in the same communication

with the validation notice, a copy of the most recent periodic statement provided to the

consumer under 12 CFR 1026.41(b), and the debt collector includes on the validation

notice, where the validation information required by paragraphs (c)(2)(vi) through

(viii) of this section would have appeared, a statement referring to that periodic

statement.

161.    A debt collector may comply with the requirement to refer to the periodic

statement in the validation notice by, for example, including on the validation notice

the statement, "See the enclosed periodic statement for an itemization of the debt."

> a. Provides the consumer, in the same communication with the
>    validation notice, a copy of the most recent periodic statement
>    provided to the consumer under Regulation Z, 12 CFR 1026.41(b);
>    and
>
> b. Includes on the validation notice, where the validation information
>    required by paragraphs (c)(2)(vi) through (viii) of this section would
>    have appeared, a statement referring to that periodic statement.

162.    Defendants failed **to** enclose that periodic statement for an itemization of

the debt rather than explaining any discrete portions of the subject debt, merely

reiterated the "Balance Due" as totaling $665,409.04, without providing any

itemization of any amounts being collected separate and distinct from the principal of

the subject debt.

163.    However, Plaintiff was confused about the amount Defendants was

attempting to collect, as he did not recall receiving any bill seeking that amount or

otherwise being obligated to pay the amount Defendant was demanding in connection

with the subject debt.

164.    Plaintiff's ability to dispute any discrete portions of the subject debt was

thus materially inhibited as a result of Defendant's conduct, as she was not provided

sufficient information to be able to determine the full nature of the subject debt

165.    The regulations promulgated under the FDCPA clarify those debt

collectors, in their initial communications with consumers, are required to itemize the

debt in a manner that allows consumers the ability to determine whether the demand

for payment includes charges or amounts additional to the principal through either

interest or other fees. See 12 C.F.R. 1006.34.

166.    Defendant failed to do so, and its failure materially inhibited Plaintiff's concrete interests protected by the FDCPA.

167.    Defendant failed to do so, and its failure materially inhibited Plaintiff's concrete interests protected by the FDCPA.

168.    Furthermore, in that letter, described himself as both a creditor, which he was not, and appropriately described himself Debt Collector confusing Plaintiff.

169.    The letter was signed by Durshcmidst, thereby giving the impression that he reviewed Plaintiff's file and made a considered determination that the debt was owed by Plaintiff. The Letter was sent or caused to be sent by persons employed by Defendant as a "debt collector" as defined by 15 U.S.C. §1692a(6).

170.    The Letter is a "communication" as defined by 15 U.S.C. §1692a(2).

171.    The Letter stated in prominent bold letters "Notice from a Debt Collector!!"

172.    A debt collection letter is deceptive when "it can be reasonably read to have two or more different meanings, one of which is inaccurate." Brown v. Card Serv. Ctr, 464 F.3d 450 (3rd Cir. 2006).

173.    It is a violation of the FDCPA for an attorney to send a debt collection letter without having first meaningfully reviewed the collection file. See e.g., Bock v. Pressler & Pressler, LLP, 30 F. Supp. 3d 283, 286-87 (D.N.J. 2014), citing Lesher v. Law Offices of Mitchell N. Kay, PC, 650 F.3d 993, 1001–1003 (3d Cir.2011), cert. denied, 132 S.Ct. 1143, 181 L.Ed.2d 1030 (2012).

174.    The reason for requiring meaningful involvement by attorneys before they may issue collection letters to consumers is simple: "Abuses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's improper threat of legal action than to a debt collection agency committing the same practice." Feuerstack v. Weiner, No. CIV. 12-04253 SRC, 2014 WL 3619675, at *4 (D.N.J. July 22, 2014).

175.    A debt collection letter on an attorney's letterhead conveys authority and credibility. See, Crossley v. Lieberman, 868 F.2d 566, 570 (3d Cir.1989). an attorney's improper threat of legal action than to a debt collection agency committing the same practice." Feuerstack v. Weiner, No. CIV. 12-04253 SRC, 2014 WL 3619675, at *4 (D.N.J. July 22, 2014). A debt collection letter on an attorney's letterhead conveys authority and credibility. See, Crossley v. Lieberman, 868 F.2d 566, 570 (3d Cir.1989).

176.    Upon information and belief, no attorney reviewed Plaintiff's account before the Collection Letter was mailed out to Plaintiff.

177.    Upon information and belief, no attorney reviewed Plaintiff's account and made a reasoned, professional judgment that the amount sought on the Collection Letter was owed by Plaintiff or that Plaintiff was delinquent on this alleged debt.

178.    There is a risk of real harm associated with Defendant's deceptive and misleading collection practices. "An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up." Lesher v. Law Offices Of Mitchell N. Kay, PC, 650 F.3d 993, 1000 (3d Cir. 2011).

179.    The entire reason a collection campaign escalates from a collection agency to a law firm such as the Defendant is to "strike fear in the heart of the consumer" since an attorney is "better positioned to get the debtor's knees knocking." Lesher v. Law Offices Of Mitchell N. Kay, PC, 650 F.3d 993, 1000 (3d Cir. 2011).

180.    As made clear by the Third Circuit, a Collection Letter on attorney letterhead is more likely to engender a payment or response from a consumer, because of the additional weight conveyed by such a Letter.

181.    The collection letters mailed to Plaintiff created the false and misleading impression that the communications were from an attorney when, in fact, they were not really "from" an attorney in any meaningful sense of the word. 49. Defendant's violations of the FDCPA thus bore the risk of real harm that the Plaintiff would

182.    Defendant patently failed to comply with the requirements of initial

communications as outlined in Regulation F, and its failure illustrates its plain

violations of law.

183.    Confused and concerned by the nature of Defendant's collection letter,

Plaintiff hired and spoke with his attorneys regarding his rights, resulting in the

accrual of expenses and expenditure of resources.

184.    Plaintiff has suffered concrete harm as a result of Defendant's actions,

including but not limited to expending time addressing and dealing with Defendant's

confusing and misleading conduct, being deprived of the ability to intelligently address

the subject debt given Defendant's violations of law, and a violation of her state and

federally protected interests to be provided clear and accurate information regarding

the debt serving as the basis of Defendant's collection efforts.

185.    On or about May 24th, 2022, 2022, in an attempt to collect on the time-

barred debt, Michael Durrschmidt, of HIRSCH & WESTHEIMER, PC  filed a Response

in Opposition to the Debtor's Emergency Motion to Allow Debtor to Sell Real Property

(related document(s):139 Emergency Motion).

186.    On or about June 1st, 2022, in an attempt to collect on the time-barred

debt, Michael Durrschmidt, of Hirsch & Westheimer, PC  filed a Response (related

document(s):147 Motion to Reconsider). Filed by Lakeland West Capital 41, LLC

187.    On or about August 16th, 2022,  in an attempt to collect on the time-

barred debt, Michael Durrschmidt, of Hirsch & Westheimer, PC  filed Objection

Related document(s) 166 Notice of Abandonment filed by Trustee Eva S Engelhart

Filed by Lakeland West Capital 41, LLC.

188.    On or about August 31st, 2022, in an attempt to collect on the time-

barred debt, Michael Durrschmidt, of Hirsch & Westheimer, PC  filed Response to

Debtor's Objection (related document(s):174 Generic Motion).

189.    On or about 12/10/2021, in an attempt to collect on the time-barred

debt, Kim Lewinski, of HIRSCH & WESTHEIMER, PC  filed Reply to Debtor's

Response to Motion for Relief From Stay (related document(s):28 Motion for Relief From Stay).

190.    On or about 12/17/2021 in an attempt to collect on the time-barred debt, Kim Lewinski, of HIRSCH & WESTHEIMER, PC  filed Proposed Order Submission After Hearing (Filed By Lakeland West Capital 41, LLC ). (Related document(s) 28 Motion for Relief From Stay)

191.    On or about 12/17/2021, in an attempt to collect on the time-barred debt, Kim Lewinski, of HIRSCH & WESTHEIMER, PC  filed Reply to Debtor's Response to Motion for Relief From Stay (related document(s):28 Motion for Relief From Stay).

192.    On or about February 2nd, 20212, in an attempt to collect on the time-barred debt, Kim Lewinski, of HIRSCH & WESTHEIMER, PC  filed Reply to Debtor's Response to Motion for Relief From Stay (related document(s):28 Motion for Relief From Stay).

193.    On or about 12/10/2021 in an attempt to collect on the time-barred debt, Kim Lewinski, of HIRSCH & WESTHEIMER, PC  filed Proposed Order Submission After Hearing (Filed By Lakeland West Capital 41, LLC )(Related document(s):28 Motion for Relief From Stay)

194.    On or about February 2nd, 20212, in an attempt to collect on the time-barred debt, Kim Lewinski, of HIRSCH & WESTHEIMER, PC  filed Reply to Debtor's Response to Motion for Relief From Stay (related document(s):28 Motion for Relief From Stay).

**195.**    On or about 01/19/2022 in an attempt to collect on the time-barred debt, Kim Lewinski, of HIRSCH & WESTHEIMER, PC  filed Proposed Order RE: Agreed Interim Order Regarding Lakeland West Capital 41, LLC's Motion for Relief (Filed By Lakeland West Capital 41, LLC ). (Related document(s):28 Motion for Relief From Stay, 56 Generic Order) (Lewinski, Kim) (Entered: 01/19/2022)

196.    On or about February 2nd, 20212, in an attempt to collect on the time-

barred debt, Kim Lewinski, of HIRSCH & WESTHEIMER, PC  filed a Notice of

Hearing on Lakeland West Capital 41, LLC's Motion for Relief from Stay. (Related

document(s):28 Motion for Relief From Stay) Filed by Lakeland West Capital 41, LLC

(Lewinski, Kim) (Entered: 05/03/2022)

**197.**    On or about 12/10/2021 in an attempt to collect on the time-barred debt,

Kim Lewinski, of HIRSCH & WESTHEIMER, PC  filed Proposed Order RE: Lakeland

West Capital 41, LLC's Motion for Relief from the Automatic Stay (Filed By Lakeland

West Capital 41, LLC ). (Related document(s):28 Motion for Relief From Stay)

(Lewinski, Kim) (Entered: 05/18/2022)

198.    On or about 12/10/2021 in an attempt to collect on the time-barred debt,

Kim Lewinski, of HIRSCH & WESTHEIMER, PC  filed Proposed Order RE: Lakeland

West Capital 41, LLC's Motion for Relief from the Automatic Stay (Filed By Lakeland

West Capital 41, LLC ). (Related document(s):28 Motion for Relief From Stay)

(Lewinski, Kim) (Entered: 05/18/2022)

**199.**    On or about 5/18/2022, in an attempt to collect on the time-barred debt,

Kim Lewinski, of HIRSCH & WESTHEIMER, PC  filed Proposed Order RE: Granting

Lakeland West Capital 41, LLC's Motion for Relief from the Automatic Stay (Filed By

Lakeland West Capital 41, LLC ). (Related document(s):28 Motion for Relief From

Stay, 128 Proposed Order) (Lewinski, Kim) (Entered: 05/18/2022)

**200.**    On or about 06/01/2022 in an attempt to collect on the time-barred

debt, Kim Lewinski, of HIRSCH & WESTHEIMER, PC  filed a Notice of Debtor's

Insurance Payment from IOLTA Funds. (Related document(s):145 Notice) Filed by

Lakeland West Capital 41, LLC

201.    On or about 06/06/2022 in an attempt to collect on the time-barred

debt, Kim Lewinski, of HIRSCH & WESTHEIMER, PC  filed Adversary case 22-03164.

Nature of Suit: (91 (Declaratory judgment)),(02 (Other (e.g. other actions that would

have been brought in state court if unrelated to bankruptcy))) Complaint for

Declaratory Judgment and Other Relief by Lakeland West Capital 41, LLC against

Diogu Kalu Diogu II

202.   On or about 06/06/2022, in an attempt to collect on the time-barred debt, Kim Lewinski, of HIRSCH & WESTHEIMER, PC  filed Response in Opposition to Debtor's Emergency Motion to Voluntarily Dismiss Chapter 7 Case (related document(s):151 Emergency Motion).

203.   On or about 6/07/2022 in an attempt to collect on the time-barred debt, Kim Lewinski, of HIRSCH & WESTHEIMER, PC  filed Adversary case 22-03165. Nature of Suit: (01 (Determination of removed claim or cause)) Notice of Removal Lakeland West Capital 41, LLC, Diogu Kalu Diogu II.

204.   On or about 05/17/2022, HIRSCH & WESTHEIMER, PC  in an attempt to collect on the time-barred debt sent a letter threatening a foreclosure sale on the Plaintiffs' homestead and personal property located at 4726 Gainsborough Drive, Brookshire, Texas 77423 based on the void June 10th, 2021 assignment of the real property lien. (Exhibit 15)

205.   On information and belief, the letter contains a falsehood again by Micheal Durschmidst because he falsely described Lakeland West 41, LLC ***as successor by assignment to mislead***. (Exhibit 15)

206.   On information and belief, Michael Durrschmidt, of HIRSCH & WESTHEIMER, PC intentionally inserted the word "successor" in an attempt to conflate the expressed statement in the tolling agreement that states quote" This Tolling Agreement shall be binding upon the Parties hereto and their legal successors."

207.   Again on July 21st, 2022, on information and belief, Lakeland's Representative, under oath directly contract that statement in open court when testified that Lakeland is not a successor to Veritex for any purposes[17].

---

[17] Texas law also applies the doctrine of judicial estoppel, which "precludes a party who successfully maintains a position in one proceeding from afterwards adopting a clearly inconsistent position in another proceeding to obtain an unfair advantage." *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 643 (Tex. 2009) (per

208.    On information and belief, on or about June 10th, 2021, Veritex Community Bank, simply sold the Loan Document to Lakeland West 41, LLC.

209.    In that hearing in open court, the sole Lakeland representative described a successor as the product of a merger like Veritex Community Bank, which is the successor to Green Bank, NA by merger.

210.    The defendant is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6) of the FDCPA.

211.    The defendant is a "third-party debt collector" as defined in § 392.00 I (7) of the TDCA.

212.    The Letter was a "communication" as that term is defined **in 15 U.S.C. §1692a(2).**

213.    The Letter was a "communication" as that term is defined in 15 U.S.C. §1692a(2).

214.    The Letter was a form of "debt collection" as that term is defined by §392.001(5).

215.    However, the Letter attempted to collect a debt that is time-barred under the applicable Texas statute of limitations.

216.    Defendants were fully aware that the Alleged Debt was time-barred in so much as it shown in the detailed itemization of the Alleged Debt relates to the maturity date of 2017 which they filed with their proof of claim the crucial date is well beyond the four-year applicable statute of limitations.

217.    Moreover, the Letter threatened Plaintiff that it will use "additional collection efforts, foreclosure sale for the 7th, of June 07th, 2022, an action barred under Texas after four has passed from the accrual date.

218.    On or about 05/15/2022, Jeff Leva; Sandy Dasigenis, Lillian Poetker the foreclosure network defendants; Kim E. Lewinski, and Bradley E. Rauch. The lawyer

curiam) (citation omitted).

defendants, in an attempt to collect on the time-barred debt, caused to be recorded a notice of trustee sale in the Fort Bend County Deed Record. (Exhibit 16)

219.    On information and belief, in granting the TRO under cause number, Harris county determined that the loan document and the debt were time-barred pursuant to section 16.035 of the Texas Civil Practice Code. (Exhibit 17)

220.    Sometime in June 2022, as a result of the abusive, ruthlessness, lack of human decency, deceptive, and unfair debt collection practices in an attempt to collect on the time-barred debt, the named defendants, Plaintiff lost a contract of over 1.0 million dollars for the sale of his house located in 4726 Gainsborough Drive, Brookshire, Texas 77423.

221.    On or about 06/07/2022, Jeff Leva; Sandy Dasigenis, Lillian Poetker the foreclosure network defendants; Kim E. Lewinski, and Bradley E. Rauch the law firm defendants, in an attempt to collect on the time-barred debt, conducted a foreclosure sale based on the void June 10th, 2021 assignment of the real property lien. (Exhibit 18 )

222.    On or about 06/15/2022, Jeff Leva the foreclosure network defendants; Kim E. Lewinski, the law firm defendant, in an attempt to collect on the time-barred debt, caused to be recorded a substitute trustee deed in the Fort Bend County Deed Record against the Plaintiffs' homestead and person property. (Exhibit 19)

223.    On or about 06/15/2022, the law firm defendant, in an attempt to collect on the time-barred debt, sent a vacation notice to Diogu kalu Diogu ii, from his house located at 4726 Gainsborough Drive, Brookshire, Texas 77423. (Exhibit 20)

224.    On or about 07/21st/2022to September 27th, 2022 the Lakeland and the law firm defendants, in an attempt to collect on the time-barred debt, filed an eviction lawsuit pursuant to the void foreclosure sale against Diogu Kalu Diogu II.

225.    On or about 01/18/2022 a cumulation of the abusive, ruthlessness, lack of human decency, deceptive, and unfair debt collection practices in an attempt to

collect on the time-barred debt, the named defendants' Plaintiff suffered a stroke, with a large blood clot in his brain causing him to undergo delicate emergency surgery and to be hospitalized for about one week, and yet they have continued their abusive, ruthlessness, lack of human decency, deceptive, and unfair debt collection practices, even when it has become clear including by judicial decision that the debt is time-barred.

226.    Further, On or about 01/18/2022 as a result of the abusive, ruthlessness, lack of human decency, deceptive, and unfair debt collection practices in an attempt to collect on the time-barred debt, the named defendants, the minor children plaintiffs suffered an indelible emotional scar when they observed their father in a single family, suffer a stroke, with a large blood clot in his brain, in their presence, causing him to undergo delicate emergency surgery and to be hospitalized for about one week, and for the first time, they were tardy at school, and they can never get their perfect attendance back;  yet these defendants, especially, Michael Durrshmidst, have continued their abusive, ruthlessness, lack of human decency, deceptive, and unfair debt collection practices, even when it has become clear including by judicial decisions that the debt is time-barred.

227.    On or about January 18th, 2022, on information and belief, the Doctor diagnosed Plaintiff stroke and blood clot as a direct result of the stress caused by the abuse, ruthlessness, lack of human decency, deceptive, and unfair debt collection practices in an attempt to collect on the time-barred debt employed by the defendants.

228.    Plaintiffs have to hire lawyers, caregivers, and numerous hospital visits as a direct result of the abusive, ruthlessness, lack of human decency, deceptive, and unfair debt collection practices in an attempt to collect on the time-barred debt, the named defendants, the minor children plaintiffs suffered an indelible emotional scar when they observed their father in a single family, suffer a stroke, with a large blood clot in his brain, in their presence, causing him to undergo delicate emergency surgery

40

and to be hospitalized for about one week, and yet these defendants have continued their abusive, ruthlessness, lack of human decency, deceptive, and unfair debt collection practices, even when it has become clear including by judicial decision that the debt is time-barred.

229.    On or about September 20th, 2022, on information and belief, Michael Durrschmidt, of Hirsch & Westheimer, PC  in an attempt to collect on time-barred debt, sent numerous emails to an attorney colleague of the Plaintiff in that email he tried to falsely represent or imply that the consumer committed a crime or other conduct to disgrace the consumer.

230.    On or about September 22nd, 2022, on information and belief, Michael Durrschmidt, of Hirsch & Westheimer, PC  in an attempt to collect on time-barred debt, filed a frivolous show cause hearing to harass the Plaintiff.

231.    Please note Exhibit A and B are just docket sheets the legal actions by docket numbers instead, and the request

## CAUSE OF ACTION
### COUNT I –
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

232.    Plaintiff repeats and realleges all above paragraphs as though fully set forth herein.

233.    Plaintiffs are  "consumers" as defined by 15 U.S.C. §1692a(3), §1692(c)(d) of the FDCPA.

234.    Defendants are "debt collectors" as defined by §1692a(6) of the FDCPA, because they regularly use the mail and/or the telephone to collect or attempt to collect, time-barred consumer debt

235.    Defendants identify themselves as debt collectors, and are engaged in the business of collecting or attempting to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or due to others, and is further a business whose principal purpose is the collection of debts.

236.    The subject consumer debt is a "debt" as defined by FDCPA §1692a(5) as it is alleged to have arisen out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes:

### a. Violations of FDCPA § 1692e

237.    The FDCPA, pursuant to 15 U.S.C. §1692e, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of "any debt."

238.    ln addition, this section enumerates specific violations, such as:

> "The false representation of .. . the character, amount, or legal status of any debt .. .. " 15 U.S.C. § 1692e(2)(A)

> "The threat to take any action that cannot legally be taken or that is not intended to be taken" 15 U.S.C. § 1692e(5)

> "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."      15 U.S.C. § 1692e(10)

239.    The FDCPA is a strict liability statute, and only one violation of the FDCPA is necessary to establish civil liability. *See In re Eastman,* 419 B.R. 7 11, 728 (Bankr. W.D. Tex. 2009) (stating that a false representation need not be intentional to be actionable under l692e (citing *Pittman v.J.J. Mac lntyre Co.,* 969 F.Supp. 609, 613 (D. Nev. 1997)). As such, "the defendant's culpability is a consideration only in computing damages under the FDCPA." *Pittman,* 969 F.Supp. at 613 (citing 15 U.S.C. 1692k(b)).

240.    The defendants violated the FDCPA by falsely suggesting that the Alleged Debt is enforceable and collectible notwithstanding the fact it failed to disclose the status of the Alleged Debt as time-barred and unenforceable.

241.    Defendants further violated the FDCPA by suggesting they would take some sort of legal action and took legal action to collect the Alleged Debt, notwithstanding the fact the debt was clearly time-barred under the applicable statute

of limitations. Exhibit 21) foreclosure sale barred against time-barred debt. 16.035 and

16.004(a)(3) of texas Civil practice and remedy code. See also, *Rose v. Select Portfolio*

*Servicing, Inc.*, 945 F.3d 226, 229 (5th Cir. 2019)

242.    The Defendants' false representation or deceptive means to collect or

attempt to collect any debt by attaching an invalid tolling agreement, as exhibit 7, to

confuse the consumer, the court, and others in an attempt to make the time-barred

debt collectible and as a decoy, in furtherance of repeatedly or continuously filing

unauthorized legal action, in this case about 68 legal actions in less 6 months with the

intent to annoy, abuse, or harass and causing the Plaintiff and his children extreme

that mental anguish that recently caused Plaintiff to have a stroke that almost killed

and leave his children fatherless. (Exhibit 3)

**COUNT II**
**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT- 15 U.S.C.**
**§1692f: UNFAIR PRACTICES**

243.    Plaintiff incorporates all facts as alleged in the foregoing paragraphs.

244.    A debt collector may not use unfair or unconscionable means to collect or

attempt to collect any debt. Without limiting the general application of the foregoing,

the following conduct is a violation of this section:

> (6) Taking or threatening to take any nonjudicial action to effect
> dispossession or disablement of property if –
>
>> (A) there is no present right to possession of the property
>> claimed as collateral through an enforceable security interest;
>>
>> (B) there is no present intention to take possession of the
>> property; or
>>
>> (C) the property is exempt by law from such dispossession
>> or disablement.

245.    Lakeland West 41, LLC, the Law Firm Defendants, and the foreclosure

network defendants violated the FDCPA by taking or threatening to take any

nonjudicial action to effect dispossession or disablement of property falsely suggesting

that the Alleged Debt is enforceable and collectible even though under 16.035

(a)(b)(d)(g)(2) of Texas Civil Practice and remedy code, the Alleged Debt is time-barred and unenforceable. See *Woodside Assur. v. NK RESOURCES*, 175 S.W.3d 421 (Tex. 1st, Hou. App. 2005)

## COUNT III
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT - 15 USC 1692G AND 12 CFR 1006.34

246.    The FDCPA, according to 15 U.S.C. § 1692g(a), outlines various pieces of information that debt collectors must include in their initial communications with consumers. Regulation F, effective as of November 30, 202 l, supplements § 1692g(a) with more explicit and detailed information that debt collectors *must* include in their initial communications to comply with the FDCPA and Regulation F. *See* 12 C.F.R. § I 006.34(c). Such information includes "the itemization date", § 1006.34(c)(vi), " the amount of the debt on the itemization date", § 1006.34(vii), and "an itemization of the current amount of the debt reflecting interest, fees, payments, and credits since the itemization date." The "itemization date" required to be provided to consumers is one of 5 points in time: (1) the last statement date for a statement provided by the creditor, (2) the charge-off date, (3) the last payment date, ( 4) the transaction date, or (5) the judgment date. 12 C.F.R. § 1006.34(b)(3). Furthermore, Regulation F requires that the information provided in the initial communication be "clear and conspicuous" which means "readily understandable." 12 C.F.R. § 1006.34(b)(3). And for residential mortgage debt, if a periodic statement is required under Regulation Z, 12 CFR 1026.41, at the time a debt collector provides the validation notice, a debt collector need not provide the validation information required by paragraphs (c)(2)(vi) through (viii) of this section if the debt collector: 12 CFR § 1006.34(c)(5)

247.    Defendants violated § 1692g(a)(l) and 12 C.F.R. § 1006.34 through its failure to follow the relevant regulations regarding providing consumers an accurate and detailed description of the amount of a debt serving as the basis of its collection efforts. Defendant's collection letter patently fails to provide any required itemization

of the subject debt. Defendants' failure deprived Plaintiff of substantive information which in turn materially inhibited Plaintiff's ability to chart an intelligent course of conduct in response to Defendant's collection efforts. Furthermore, Defendants' articulation of the subject debt fails to provide Plaintiff with any of the 5 required dates from which an itemization must be provided… Despite the clear availability of model letters designed to ensure compliance with the new regulations, the Defendants' collection letter fails to consider the extent of the information now required to be provided to consumers.

### COUNT IV
### VIOLATION OF PROHIBITION OF BRINGING A LEGAL ACTION AND THREATS OF LEGAL ACTION ON TIME-BARRED DEBT 12 CFR 1006.26(b)

248.    Plaintiff incorporates all facts as alleged in the foregoing paragraphs.

249.    Regulation F prohibits taking or threatening legal action on time-barred debts.[18]

250.    Thus, debt collectors could be liable for taking or threatening to take legal action on a time-barred debt regardless of whether the debt collector actually knows, or even should know, that the debt is time-barred[19].

251.    This is significant because it creates what is essentially a strict liability cause of action that can be asserted against the debt collector for pursuing the potentially stale debt.[20]

252.    A violation of this prohibition is a violation of the FDCPA, and successful litigants can recover actual and statutory damages and attorney fees. The prohibition on suing or threatening to sue on a time-barred debt is consistent with existing FDCPA law that reaches the same conclusion.[21]

---

[18]  12 C.F.R. § 1006.26(b).
[19]  However, proof of claims filed in bankruptcy proceedings are exempt from this prohibition.
[20]  It is important to note that the CFPB in the supplementary information pointed to the potential availability of a bona fide error defense under 15 U.S.C. § 1692k(c), but that courts should follow the Supreme Court's decision in Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich L.P.A., 559 U.S. 573 (2010) to interpret this defense as only applying to factual errors, not legal ones.
[21]  15 U.S.C. § 1692e(5). Existing case law holds that a threat to bring suit on a time-barred debt need not be

253.    Regulation F defines "statute of limitations" as "the period prescribed by applicable law for bringing a legal action against the consumer to collect a debt" and "time-barred debt" as "a debt for which the applicable statute of limitations has expired.[22]"

254.    The CFPB rule provides that a collector violates this provision whether or not it knows that the debt is time-barred[23]. This is consistent with existing law—the FDCPA is a strict liability statute; the consumer need not prove that the collector knew the limitations period had expired. Regulation F of the CFPB rules prohibits debt collectors from bringing or threatening to bring legal action to collect a time-barred debt, to be codified at 12 C.F.R. § 1006.26(b).

255.    Regulation F codified 12 CFR 1006.26(b) excludes "proofs of claim" filed in a consumer's bankruptcy proceeding from the provision prohibiting the filing or threatening to file an action on a time-barred debt. This is consistent with the Supreme Court decision in Midland Funding, L.L.C. v. Johnson, 137 S. Ct. 1407 (2017), that time-barred proofs of claim do not violate the FDCPA because the special protections offered by the bankruptcy process, that can be disallowed and discharged by the Trustee, but prohibits bringing legal action in a bankruptcy court in addition to the proof of claim[24].

256.    Regulation F prohibitions as codified in 12 CFR 1006.26(b) includes any legal action brought in any court of competent jurisdictions, including the bankruptcy court, other than the proof of claims, and other federal and state courts.

---

explicit; implicit or vague representations can be actionable if viewed as a threat by the least sophisticated consumers. Some courts find a collector's offer to settle a debt is deceptive where the statute of limitations has run, because a settlement implies the collector is giving up the right to sue on the debt, and the collector should first disclose that the limitations period prevents the collector suing.

[22] 12 C.F.R. §§ 1006.26(a)(1)-(a)(2).

[23] CFPB's supplementary information at 42, 56, and 57. URL:
https://files.consumerfinance.gov/f/documents/cfpb_debt-collection_final-rule_2020-12.pdf

[24] Because proof of claim is considered a formal pleading, unlike other legal actions, like motions, notice, any pleading requesting a declaratory or affirmative remedy

257.    Before the enactment of Regulation F., many federal courts have issued decisions holding that suing[25], or even collecting (without a suit), on time-barred debt may violate the FDCPA under a variety of theories, such as collection under such circumstances is unconscionable (15 U.S.C. § 1692f), is neither authorized, nor permitted by law (*id.*), or is misleading in various ways (§ 1692e(2), § 1692e(5) and § 1692e(10)).

258.    In addition, if state law is violated because, for example, the amount sought by a debt collector is neither authorized by agreement "nor permitted by law," then the FDCPA is likewise violated.  *See, e.g.* FDCPA, 15 U.S.C. § 1692f(1), §1692e(2), §1692e(5), § 1692e(10); *Newman v. CheckRite*, 912 F.Supp. 1354, 1376 (E.D. Cal. 1995); *West v. Costen*, 558 F.Supp. 564, 573 (W.D. Va. 1983).

259.    Under Texas laws, Judicial "Legal action" means a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim, or any other judicial pleading or filing that requests legal, declaratory, or equitable relief. Tex. Civ. Prac. & Rem. Code § 27.001(6). See also, *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018), reh'g denied (June 22, 2018).

260.    Plaintiff also contends that under Texas laws, nonjudicial foreclosure is a legal action that incorporates the steps leading to the foreclosure sale as described in the deed of trust and Section 51.002 of the Texas Property Code. First, the lender or mortgage servicer sends a residential debtor 20 days' notice to cure the default. If not, the next step may be initiated, etc.

261.    Defendants in an attempt to enforce a time-barred debt violated 15 U.S.C. § 1692f in that the actions taken were neither authorized, nor permitted by law (*id.*), or is misleading in various ways (§ 1692e(2), § 1692e(5) and § 1692e(10)) and legal actions are prohibited ab initio pursuant to 12 C.F.R. § 1006.26 through its failure

---

[25] ***Larsen v. JBC Legal Corp., P.C.*** 533 F.Supp.2d 290, 301-03 (E.D. N.Y. 2008) (threatening legal action on time-barred debt violates FDCPA)

to follow the relevant regulations and Regulation F' that include provisions that prohibit a collector from initiating or threatening to bring a time-barred collection action. A violation of this prohibition is a violation of the FDCPA, and successful litigants can recover actual and statutory damages and attorney fees. As shown above, the prohibition on suing or threatening to sue on a time-barred debt is consistent with existing FDCPA law that reaches the same conclusion.

262.    The FDCPA "prohibits the use of 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" Daugherty v. Convergent Outsourcing, Inc., 836 F.3d 507, 510-11 (5th Cir. 2016) (quoting 15 U.S.C. § 1692e). Among other things, "the FDCPA prohibits '[t]he false representation of . . . the character, amount, or legal status of any debt . . . .'" Salinas v. R.A. Rogers, Inc., 952 F.3d 680, 683 (5th Cir. 2020) (quoting 15 U.S.C. § 1692e(2)(A))

263.    Defendants, Michael Durshmidst, Hirsch & Westheimer, P.C., Bradley E. Rauch, Kim. E. Lewinski, in filing their time-barred proof of claims attached Exhibit 7, a tolling agreement that was void ab intio as it relates to Lakeland West 41, LLC.

264.    The deception was to make the time-barred debt enforceable and caused the Chapter 7, Trustee not to immediately object to it and discharged it.

265.    The plaintiff was so sophisticated that the Plaintiff, a rocket scientist had to hire and consult with complex chapter 7 bankruptcy lawyers because of the degree of confusion it created. One of the judges that first reviewed the case openly said this was very confusing took it into advisement and was still confused. Because of the level of sophistication, it took a seasoned Harris County Judge, in granting a TRO for 20 days because she felt a good cause exist as a result of the deception. (TRO Exhibit 22 ) .

266.    Furthermore, ad most egregious, n violation of 12 CFR 1006.26(b), the Defendants, Michael Durshmidst, Hirsch & Westheimer, P.C., Bradley E. Rauch, Kim. E. Lewinski, filed over 68 legal actions when they knew their debt has been time-barred since February 3rd, 2021. Request the court to take judicial notice of numerous

legal actions filed by Defendant from November 17th, 2021 to the present. Exhibit

(Exhibit 7, 9, 10)

267.    Defendants, in an attempt to enforce a time-barred debt violated FDCPA

when noticed and moved for foreclosure sale in violated Texas state case laws and

statutes under sections 16.035(a), (b), (d), and (g)(2) of the Texas Civil Practice, and

Remedy Codes, and as such violated FDCPA as codified under 15 U.S.C. § 1692f in that

the actions taken were neither authorized, nor permitted by law (***id.***), or is misleading

in various ways (§ 1692e(2), § 1692e(5) and § 1692e(10)) and legal actions are

prohibited ab initio pursuant to 12 C.F.R. § 1006.26(b)

268.    Defendants, HIRSCH & WESTHEIMER, P.C., BRADLEY E. RAUCH,

KIM. E. LEWINSKI, JEFF LEVA, SANDY DASIGENJS, and LILLIAN POELKER in an

attempt to enforce a time-barred debt through a foreclosure sale, violated Texas state

case laws and statutes under section 16.035(a), (b), (d) and (g)(2) of the Texas Civil

Practice, and Remedy Codes, violated the FDCPA because in the analysis in the first

Court of appeal, *Woodside Assur. v. NK RESOURCES*, 175 S.W.3d 421 (Tex. 1st, Hou.

App. 2005) the court held that once the statute of limitations passed on Woodside's

real property lien, all remedies for enforcement of the lien were lost. With no remedy

for enforcement, Woodside could not recover the excess proceeds)

269.    Therefore, in the instant case, the defendants violated the FDCPA,

because, with no remedy for enforcement, Lakeland could not recover through a

foreclosure sale or suit in forcible detainer action. QED[26]

270.    Further, Defendants, Lakeland West 41, LLC, *HIRSCH &*

*WESTHEIMER, P.C., KIM. E. LEWINSKI AND MICHAEL DURSHMIDST*, in an

attempt to enforce a time-barred debt through filing a knowingly false proof of claim,

frivolous legal actions there and in the May 17th, 2022 a bold face misleading statement

---

[26] "Q.E.D." (sometimes written "QED") is an abbreviation for the Latin phrase "quod erat demonstrandum" ("that which was to be demonstrated"), a notation which is often placed at the end of a mathematical proof to indicate its completion.

contained in the letter relating to a foreclosure sale, violated texas state case laws, the considerable legal actions filed by the lawyer defendants within such a considerably short time showed egregiously and disregard for human life, and the rule of law, points a reckless intend to violate the FDCPA § 1692d, § 1692e and § 1692f and legal actions are prohibited ab initio pursuant to 12 C.F.R. § 1006.26(b)

271.    In Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C. 114 F. Supp. 3d 1342 (N.D. Ga. 2015), in finding that a law firm committed an "unfair, deceptive, or abusive act or practice" in violation of the Consumer Financial Protection Act, 12 U.S.C. § 5536(B), the standard for which "is the same as the standard under § 5 of Federal Trade Commission Act."  Holding, "To be clear, the practice-of-law exclusion does not apply to the FDCPA claims. See 12 U.S.C. § 5517(e)(3) ("Paragraph (1) shall not be construed as to limit the authority of the Bureau concerning any attorney, to the extent that such attorney is otherwise subject to any of the enumerated consumer laws or the authorities transferred under subtitle F or H."); 12 U.S.C. § 5481(12)(H) (defining "enumerated consumer laws" to include the FDCPA); see also Heintz v. Jenkins, 514 U.S. 291, 294, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) (holding that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation"); Miljkovic v. Shafritz and Dinkin, P.A. et al., 791 F.3d 1291, 1297–98 (11th Cir.2015) (holding that the FDCPA applies to litigation activity of lawyers and all documents they file in Court including affidavits, "categorically prohibiting abusive conduct in the name of debt collection" even when the consumer's counsel is the targeted audience).

272.    Section 1692d of the FDCPA prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. " '[A]ctionable harassment or annoyance turns not only on the volume of calls made but also on the pattern of calls.' " Brown v. Credit Mgmt. , 131 F. Supp. 3d 1322, 1340 (N.D. Ga. 2015)

(quoting Brandt v. I.C. Sys., Inc. , No. 8:09-cv-126, 2010 WL 582051, at *2 (M.D. Fla.

Feb. 19, 2010) (citations omitted)).

273.    Furthermore, "[i]t is not enough that a debt collector's actions caused the

consumer 'embarrassment, inconvenience, and further expense,' but rather those

actions must 'manifest a tone of intimidation.' " Middlebrooks v. Sacor Fin., Inc., 775

F. App'x 594, 597 (11th Cir. 2019) (quoting Miljkovic v. Shafritz & Dinkin, P.A., 791

F.3d 1291, 1305 (11th Cir. 2015).

274.    Lakeland West 41, LLC, the Law Firm Defendants, filed more than 68

legal actions within a very short time in an attempt to collect on time-barred in

violation of 12 CFR 1006.26(b)

275.    The Debt collectors' manifested a tone of intimidation by filing at least

68 legal actions, numerous foreclosure postings, and more by a debt collector for time-

barred, their conduct equivalent to 15 USC 1692d(5) Causing a telephone to ring or

engaging any person in telephone conversation repeatedly or continuously with intent

to annoy, abuse, or harass any person at the called number.

WHEREFORE, Plaintiffs, respectfully request that this Honorable Court

enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are
   unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff statutory damages of $1,000.00 provided
   under 15 U.S.C. §1692k(a)(2)(A);

c. Awarding Plaintiff actual damages, in an amount to be
   determined at trial, as provided under 15 U.S.C. §1692k(a)(l);

d. Awarding Plaintiff costs and reasonable attorney fees as
   provided under 15 U.S.C. §I 692k(a)(3); and

e. Awarding any other relief as this Honorable Court deems just and
   appropriate.

### COUNT IV.

### VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT

276.    Plaintiff restates and realleges paragraphs 1 through 30 as though fully set forth herein.

277.    Plaintiff is a "consumer" as defined by Tex. Fin. Code Ann.§ 392.001(1).

33. Defendant is a "debt collector" and "third party debt collector" as defined by Tex. Fin. Code Ann.§ 392.001(6) and (7).

278.    The subject debt is a "consumer debt" as defined by Tex. Fin. Code Ann. § 392.00 l (2) as it is an obligation, or alleged obligation, arising from a transaction for personal, family, or household purposes.

a. Violations of TDCA § 392.304

279.    The TDCA, under Tex. Fin. Code Ann. § 392.304(8), prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt … " The 36. Defendant violated the above-referenced provisions of the TDCA in much the same way it violated § 1692-1692p, *et seq.* as outlined above.

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court enter judgment in her favor as follows:

a.    Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.    Entitling Plaintiff to injunctive relief pursuant to Tex. Fin. Code Ann.§ 392.403(a)(l).

c.    Awarding Plaintiff actual damages, pursuant to Tex. Fin. Code Ann. § 392.403(a)(2).

d.    Awarding Plaintiff punitive damages, in an amount to be determined at trial, for the underlying violations;

e.    Awarding Plaintiff costs and reasonable attorney fees, pursuant to Tex. Fin. Code Ann. § 392.403(b)

f.    Awarding any other relief as this Honorable Court deems just and appropriate.

**COUNT VI.**
**VIOLATIONS OF § 12 OF THE TEXAS CIVIL PRACTICE &**
**REMEDIES CODE**

280.   Plaintiffs hereby adopt by reference every paragraph of the Facts and allegations stated in this complaint as if fully and completely set forth herein,

281.   Section 12.002 of the TEXAS CIVIL PRACTICE & REMEDIES CODE ("CPRC") provides:

(a)   *A* person may not make, present, or use a document or other record with:

(1)   the knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

*(2)*   intent that the document or other record be given the same legal effort as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property, and

(3)   intent to cause another person to suffer:

(A)   physical injury;

(B)   financial injury or

(C)   mental anguish or emotional distress.

282.   *A* person who violates Subsection (a) or (a-1) is liable to each injured person for:

a.   the greater of

(A)   $10,000: or

(B)   the actual damages caused by the violation;

b.   court costs;

c.   reasonable attorney's fees; and

d.   exemplary damages in an amount determined by the court.

TEX. CIV. PRAC. & REM. CODE § 12.002.

(b)    On or about June 15th, 2022, Defendants made presented or used a document or other record with the knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real property or an interest in real property.

(c)    Defendants made, presented, or used a document or other record with the intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the: Texas constitution or laws of the State of Texas, evidencing a valid lien or claim against real property or an interest in real property.

(d)    The documents or records filed or caused to be filed by Defendants, falsely represent Defendants' interest in the real property that is the subject of such instruments, causing damages and injuries to Plaintiffs and the Class.

(e)    Defendants knew at the time of such filing that the instruments falsely represented Defendants' interest in the real property that is the subject of such instruments.

283.    Defendants made, presented, or used a document or other record with intent to cause Plaintiffs to suffer financial injury, mental anguish, or emotional distress.

284.    The defendants' conduct and actions violated TEX. CIV. PRAC. & REM. CODE § 12.002 on or after June 15th, 2022, for which Plaintiffs and the Class Members seek judgment against Defendants, jointly and severally, equal to the greater amount of $10,000 per violation, or actual damages caused by each violation, together with attorney's fees, court costs, and exemplary damages in an amount determined by the Court

285.   Plaintiffs plead the discovery rule, which tolls the Texas statute of limitations applicable to claims brought under TEX. CIV. PRAC. & REM. CODE *§* 12.002. Although Plaintiffs exercised reasonable diligence in attempting to discover liens on their property, their legal injury was inherently un-discoverable due to Defendants' conduct, and application of the discovery rule would not disserve public policy

### B.    NEGLIGENCE PER SE

(f)    Plaintiffs hereby adopt by reference every paragraph of the Facts and allegations stated in this Complaint as if folly and completely set forth herein.

(g)    Defendant ts was negligent per se in the misconduct alleged herein. Such negligence per se included, but was and is not limited to:

(4)    violation of section 12.002 of the TEXAS CIVIL PRACTICE & REMEDIES CODE by filing false and deceptive records in the deed records of Texas on or about June 15, 2022; and

(5)    violation of section 192.007 of the TEXAS LOCAL GOVERNMENT CODE by failing to properly record all releases, transfers, assignments, or other actions relating to instruments Defendant filed or caused to be filed, registered, or recorded in the deed records of Texas in the same manner as the original instrument was required to be filed, registered, or recorded.

286.   The negligence per se of Defendants set forth herein was a proximate cause of damages to Plaintiff.

287.   Plaintiffs plead the discovery rule, which tolls the Texas statute of limitations applicable to claims. Although Plaintiffs exercised reasonable diligence in attempting to discover liens on their property, their legal injury w a s inherently un-discoverable due to Defendants' conduct, and application of the discovery rule would

not diserve public policy

### C. GROSS NEGLIGENSE PER SE

288.   plaintiffs hereby adopt by reference every paragraph of the Facts and allegations stated in this Complaint  as if fully and completely set forth herein.

289.   Defendants were grossly negligent per se in the misconduct alleged herein. Such gross negligence per se included, but was and is not limited to:

- violation of section 12.002 of the TEXAS CIVIL PRACTICE & REMEDIES CODE by filing false and deceptive records in the deed records of Texas on or about June 15, 2022; and

- violation of section 192.007 of the TEXAS LOCAL GOVERNMENT CODE by failing to properly record all releases, transfers, assignments, or other actions relating to instrun1ents Defendant filed or caused to be filed, registered, or recorded in the deed records of Texas in the same manner as the original instrument was required to be filed, registered, or recorded.

290.   The gross negligence per se of Defendants set forth herein was a proximate cause of damages to Plaintiffs and the Class for which they seek the judgment of the Court

291.   Plaintiffs plead the discovery rule, which tolls the Texas statute of limitations applicable to claims. Although Plaintiffs exercised reasonable diligence in attempting to discover liens on their property, their legal injury was inherently un-discoverable due to the Defendants'conduct and application of the discovery rule would not disserve public policy

### D. DECLARATORY JUDGMENT

292.   Plaintiffs hereby adopt by reference every paragraph of the Facts and allegations stated in this complaint as if fully and completely set forth herein.

293.   On or about June 15th, 2022, Defendants made, presented or used a document or other record with the knowledge that the document or other

record is a fraudulent court record or a fraudulent lien or claim against real property or an interest in real property.

294.   According to TEX. CIv. PRAC. & REM. CODE § 37, Plaintiffs seek a declaratory judgment that all "Transfers of Liens" and "Assignments" of mortgage and notes from Veritex Community Bank to Defendant after February 3rd, 2021, are invalid

295.   According to TEX. CIv. PRAC. & REM. CODE § 37, Plaintiffs a decltu·atory judgment that Lakeland West 41, LLC, ., is not the legal owner or holder of mortgages and notes on 4726 Gainsborough Drive, Brookshire, Texas 77423

296.   According to TEX. CIV. PRAC. & REM. CODE § 37, Plaintiff and the Class seek a declaratory judgment that Defendants made, presented, or used a document or other record with the knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real property or an interest in real property in violation of TEX. CIv. PRAC. & REM. CODE § 12.002.

297.   According to TEX. C!V. PRAC. & REM. CODE § 37, Plaintiff and the Class seek a declaratory judgment that Defendants made, presented, or used a document or other record with the intent that the document or other record he given the same legal effect as a court record or document of a court created by or established under the Texas constitution or laws of the State of Texas, evidencing a valid lien or claim against real property or an interest in real property in violation of TEX. Crv. PRAC. & REM. CODE § 12.002.

298.   Under TEX. Crv PRAC. & REM. CODE § 37, Plaintiffs and the Class seek a declaratory judgment that documents or records filed or caused to be filed by Defendants, falsely represent Defendants' interest in the real property that is the subject of such instruments in violation of TEX. C!V. PRAC. & REM. CODE § 12.002.

299.   Pursuant to TEX. C!V. PRAC. & REM. CODE § 37, PlaintitlS and the Class seek a declaratory judgment that Defendants are liable for having failed to properly record all releases, transfers, assignments, or other actions relating to instruments Defendants tiled or caused to be filed, registered, or recorded in the deed records of Texas in the same manner as the original instrument was required to be filed, registered, or recorded.

300.   Pursuant to TEX. Civ. PRAC. & REM. CODE § 37.009, Plaintiffs and the Class seek recovery of costs and reasonable attorney's foes.

301.   Plaintiffs plead the discovery rule, which tolls the Texas statute of limitations applicable to claims. Although Plaintiffs exercised reasonable diligence in attempting to discover liens on their property, their legal injury was inherently un-discoverable due to Defendants' conduct, mid application of the discove1y rule would not disserve public policy.

## CIVIL RIGHT VIOLATION
## MICHAEL DURRSHMISDT, MARC MYERS, AND EVA ENGLEHART

## BACKGROUND ALLEGATIONS

302.   It is not a secret in the Bankruptcy legal community that this southern district of Texas has racism and national origin animus problem. The plaintiff was told in his face about the inherent racism and the national original animus in this Bankruptcy jurisdiction. To say otherwise is to live in Alice in wonderland.

303.   Because I was informed in my face by many bankruptcy lawyers who turned me down for employment because they all acknowledged that the courts and the trustee will make it hard because of my Nationality, Nigerian. Further, in a county where 20% are African, No Bankruptcy Judge, or a Chapter 7, and the Trustee is black.

304.   That is why it is so easy for Michael Durrshmisdt, Marc Myers, and Eva Englehart to conspire to steal my house, on account of race and national origin animus **ON MY DEAD BODY.**

305.    By the way, Michael Durrshmisdt is a debt collector attempting to collect on a time-barred debt, and should not even be in court, according to 12 CFR 1006.26(b) provides a debt collector must not bring or threaten to bring legal action against a consumer to collect a time-barred debt.

306.    But Eva Shazir Englehart and Marc Myers, her attorney (Collectively called "Englehart") have displayed racism and national origin animus so overtly that even creditors who dislike Plaintiff have noticed it.  They have noticed that as a result of racism and national origin animus, Eva Englehart and Marc Meyers have turned a mostly **1 time only, 10-minute 341 creditors** meetings, into an open-ended and unending spectacle to harm the Plaintiff, so much so that the creditors barely appear anymore.

307.    As a result, a result of racism and national origin animus, it is no longer 341 Creditor's meeting as it relates to Plaintiff. Eva Englehart has turned the 341 Creditor's meeting into a fishing expedition and a perjury trap[27].

308.    They cannot be another explanation other than her conduct is based on her racism and extreme national origin animus. Racism and National origin animus, like Obscenity, you know it when you see it[28]. In this case, as to Eva Englehart and Marc Myers, there are glaring before you.

309.    On information and belief, the US Trustee office, who participates in this must have noticed the abuse of the 341 Creditors, which by right is there but kept quiet

310.    The plaintiff is aware, that the American public[29], is uncomfortable with

---

[27] Set on 9/23/2022, another Notice of Continuance of Meeting of Creditors. 341(a) meeting to be held on 10/13/2022 at 03:00 PM at Trustee Engelhart Teleconference Line. (Engelhart, Eva). The US Trustee's silence on this abuse of office by this woman is deafening, and bewildering and shows that the system is broken.

[28] In his concurring opinion in the 1964 _Jacobellis v. Ohio_ case, Supreme Court Justice Potter Stewart delivered what has become the most well-known line related to the detection of "hard-core" pornography: the infamous "I know it when I see it." statement. "I have reached the conclusion . . . that under the First and Fourteenth Amendments criminal laws in this area are constitutionally limited to hard-core pornography. I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description, and perhaps I could never succeed in intelligibly doing so. But I know it when I see it, and the motion picture involved in this case is not that." But in this instant case, the named individuals' conduct is motivated by race and national origin animus.

[29] The author is very well traveled and can attest that the US citizens are one of the best, kindest, and

the label racist or national original animus as such doesn't like to raise the issue. But in not doing so, Michael Durrshmisdt, Marc Myers and Eva Englehart[30], and others act with impunity, against people like the Plaintiff, hoping that the Plaintiff or any oppressed suffer and die in silence.

311.     The specific misconduct by Eva Englehart and Marc Meyers further illustrates that there cannot be another explanation for their behavior other than Racism and National Origin animus.  The Plaintiff is an African National from Cameroon. Defendants, Michael Durrshmidt is white so are Marc Myers and Eva Englehart.

## DEFENDANTS' MISCONDUCT

312.     Rather than continue to perform the Chapter 7, Trustee work necessary to properly provide the Plaintiff a fresh start, which is the purpose of the bankruptcy code, the Defendants instead conspired among themselves and with others to deprive the Plaintiff of his homestead, which is his whole means for a fresh start.

313.     Specifically, the Defendants unjustly singled out Plaintiff's homestead and affirmatively endeavored to stretch the 341 meetings, and discharge schedule to give, Michal room to complete the "STEAL", dereliction of duty, and manipulate the facts and the evidence to fit the false hypothesis, that created subject matter jurisdiction when none existed that will cause him to lose his homestead.

314.     In *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 197 L. Ed. 2d 790, 581 U.S. (2017), The supreme court's majority relies heavily on the presence of a bankruptcy trustee, appointed to act on the debtor's behalf and empowered to (among

---

least self-assuming human beings on earth, but they tend to look the other away when it comes to confronting racism, bigotry, and homophobia, head-on, especially in our court system, even though at least 3 of our constitutional amendments, attempted to address them, e.g., 13th, 14th, and 15th amendments.

[30] It is not comfortable for me to call out these 3 individuals, but as Maya Angelou once said, "When people show you who they are, believe them the first time." This is one of the hardest life lessons that I've ever tried to follow, but it is sage advice. When someone really shows you and tells you who they are, take them at their word.

other things) object to claims that he believes lack merit. See 11 U. S. C. §§704(a)(5), 1302(b). In the majority's view, the trustee's gatekeeping role makes it "considerably more likely that an effort to collect upon a stale claim in bankruptcy will be met with resistance, objection, and disallowance." Ante, at 7.)

315.    Simply put, the trustee must object and discharge a time-barred debt, which did not happen here, because of the conspiracy between Michael DuirshmsidIt (sic) who is white, and Marc Myers, and Eva Englehart who is also white, conspired not to object to the time-barred proof of claim filed on or About December 2021 an amended on June 6th, 2022. *The Estate agrees to allow, and not object to, Lakeland's Claim No. 2.) And she agreed.* It gets worse**.** The Trustee's misconduct began much earlier based on racism and national origin animus.

316.    On or about March 2nd, 2022, issuing a notice of subpoena, the trustee said: "Any party in interest who wishes to receive a copy of the subpoena will be provided such upon email request". (Exhibit 23) The Plaintiff's attorney who is black provided an email, request but he was denied while other white layers were given copies of the subpoena.

317.    On August 1st, 2022, the trustee offered Plaintiff to abandon certain litigation claims. (Exhibit 23) and Plaintiff accepted. The next day, the trustee filed the notice of abandonment which is irrevocable. (Exhibit D) See *Murray v. Nagy (In re Nagy)*, 432 B.R. 564 (Bankr. M.D. La. 2010)(Holding that property abandoned from the estate reverts to the debtor**.** The abandonment is irrevocable, even in the face of an allegation that the property was worth more than the value the debtors assigned to it in their schedules. In re Killebrew, 888 F.2d 1516, 1520 (5th Cir. 1989) (citations omitted); see also In re Parson, 2007 WL 3306678, at *8 (Bankr.W.D.Va. November 6, 2007) (collecting cases)). A few days later in another conspiracy between the white defendants, they agree that the Trustee withdraws the notice of abandonment which she can't do because of the notice's irrevocability, but she did anyway on or about

8/22/2022.

318.    On or about 08/25/2022, in another conspiracy between the white defendant, the trustee just decided to auction the non-exempt property even those that she had no standing to do so, but she did not care. (Exhibit F) and concurred by Defendant, Michael Durshmidt who intended to buy them in the auction.

319.    Nonetheless, the white Defendants manufactured "evidence", usurped subject matter jurisdiction, and contrary to 12 CFR 1006.26(b)[31] thereby fraudulently exposing the Plaintiff's homestead, his sole hope for reorganization in dire straits, lost in this disorder.

320.    On information and belief in addition to arguing that the FDCPA protects homeowners facing all kinds of foreclosure, Plaintiffs attached NAACP Legal Defense and Educational Fund (LDF)'s amicus brief highlighted the particular risks faced by African-American homeowners and why we need an **African American Charter 7, Trustee.**

321.    The brief explained that, due to more than a century of discriminatory housing policies, African Americans are more vulnerable to debt collection abuses by law firms like HIRSCH & WESTHEIMER, PC AND ITS ATTORNEY, MICHAEL J. DURRSCHMIDT IN PARTICULAR, Eva Englehart, purported Chapter 7, Trustee, who acts with impunity and shows zero regard to the home involved here, instead she accepted a bribe of $5,000.00 must be monitored and the US Trustee's though extremely respectful**, seem unempowered to protect minority and African American in particular from a wayward Chapter 7, Trustee, like Eva Englehart and Marc Myers,  who are a private employee from unlawfully causing** in foreclosing on African America homeowners[32].

---

[31] A debt collector must not bring or threaten to bring a legal action against a consumer to collect a time-barred debt. This paragraph (b) does not apply to proofs of claim filed in connection with a bankruptcy proceeding.

[32] **Debt Collector**. Snap! **Hirsch Westheimer** is Repeatedly Removing Cases to Federal Court **HIRSCH & WESTHEIMER, P.C.**: URL: https://lawsintexas.com/snap-hirsch-westheimer-is-repeatedly-removing-cases-to-federal-court/

322.    Therefore, the FDCPA's protections in the foreclosure context are a matter not just of consumer justice, but of racial justice[33].

## COUNT VII -- SECTION 1985(3)
## CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS

323.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

324.    If two or more persons in any State or Territory conspire or go in disguise on the highway or the premises of another, to deprive, either directly or indirectly, any person or class of persons of the equal protection of the laws, or equal privileges and immunities under the laws;

325.    As described more fully above, each of the Defendants Eva Englehart, Chapter 7, Bankruptcy trustee, and Marc Myers, her attorney conspire with Michael J Durrschmidt, and Hirsch & Westheimer PC, to directly or indirectly, deprive Plaintiff of his equal protection and due process rights contained in the fifth and 14th Amendment of the US Constitution.

326.    In doing so, Defendants took actions in furtherance of this conspiracy, causing injury to Plaintiff.

327.    In addition, the defendants attempted to deny  him his right to bankruptcy protection and provided him a fresh start as guaranteed Article I, Section 8, of the United States Constitution authorizes Congress to enact "uniform Laws on the subject of Bankruptcies?" Under this grant of authority, Congress enacted the "Bankruptcy Code" in 1978,

328.    In doing so, by accepting a settlement agreement including a $5,000.00 kickback, to agree not to object to the time-Barred proof of claim (Exhibit H) filed by Michael J Durrschmidt, and Hirsch & Westheimer PC (Exhibit I) by ignoring the

---

[33] In this case, our preliminary finding points to potential collusion between HIRSCH & WESTHEIMER, PC, and **Eva** Shafir **Englehart**, Chapter 7, Trustee in the underlying bankruptcy case, in addition to her lack of care on the effect of her dereliction of duty impacts Diogu's homestead. See In re Smyth, 207 F.3d 758, 761–62 (5th Cir. 2000).

invalidity of the tolling agreement as it relates to Lakeland West 41, LLC

329.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

330.    The misconduct described in this Count was undertaken under the policy and practice of the Chapter 7 Bankruptcy trustee under the auspices of the US Trustee office of the Southern, endorsed by the Chief Bankruptcy Judge of this district in the manner described more fully in the preceding paragraphs.

**COUNT VIII -- 42 U.S.C. § 1986**
**FAILURE TO INTERVENE BY**
**THE ASSISTANT UNITED STATES TRUSTEE,  REGION 7**

331.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

332.    On information and belief, the United States Trustees appoint and supervise private trustees who administer bankruptcy estates under chapters 7, 11, 12, and 13 of the Bankruptcy Code. Private trustees are not government employees. They do, however, work in concert with the United States Trustee to ensure the efficiency and integrity of the bankruptcy system including the supervisory authority and management of the 341 creditors' meetings.

333.    On information and belief, in this instant case, in addition, the US Trustee represented has attended all the abusive, 341 creditors' meeting set, by Eva Englehart, and Marc Myers.

334.    In the manner described above, during the constitutional violations described above, one or more of the Defendant, and other employees of the US Trustee office stood by without intervening to prevent the misconduct.

335.    As a result of the Assistant US Trustee's failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered pain and injury, as

well as emotional distress.

336.    These Defendants had a reasonable opportunity to prevent this harm but failed to do so.  The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

337.    The misconduct described in this Count was undertaken under the watchful eyes of the Region 7, United States Trustee Office's policy and practice in the manner described in the preceding paragraphs.

**W**HEREFORE **Plaintiffs, have** stated causes of action for which the law provides a remedy, they pray for judgment including equitable and injunctive reliefs, award of compensatory damages and punitive damages as may be determined by the Court or the Jury, other relief fair and just as the Court may see fit.

## ATTORNEY'S FEES

338.    Plaintiffs hereby adopt by reference every paragraph of the Facts and allegations stated in this complaint as if fully and completely set forth herein.

339.    On or about June 15, 2022, Defendants made, presented, or used a document or other record with the knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real property or an interest in real property.

340.    In addition, as a result of the acts and omissions of Defendants, as specifically set forth herein, Plaintiffs needed to secure counsel to present and prosecute this matter on their behalf

(h)    Plaintiffs have retained the services of the undersigned counsel of record, and accordingly,  Plaintiffs for the recovery of reasonable attorney's fees

under TEX. R. Civ. P. 42(i), TEX. C!V. PRAC. & REM. CODE § 12.002, and TEX.

C!V. PRAC. & REM. CODE § 37.009.

## VIII.   EXEMPLARY DAMAGES

(i)     Plaintiffs hereby adopt by reference every paragraph of the Facts

and allegations stated in this Complaint as if fully and completely set forth

herein.

(j)     On or about June 15th, 2022, Defendants made. present ted, or

used a document or other record with the knowledge that the document or

other record is a fraudulent court record or a fraudulent lien or claim against

real property or an interest in real property.

(k)     T11e conduct of Defendants as set forth herein constituted fraud,

malice, or gross negligence such that  Defendants are liable for exemplary

damages for which  Plaintiffs seek the judgment of the Court.

162.    Plain tiffs' injuries and damages resulted from D e f e n d a n t s ' gross

negligence, malice,  or actual fraud,  which entitles  Plaintiffs to exam play

damages under  Texas  Civil Practice & Remedies Code § 41003(a), TEX. C!V.

PRAC. & REM. CODE § 12.002, and Texas common law.

341.    The conduct of Defendants' actions or omissions described above,

when  viewed  from  the  standpoint of Defendants  at the  time  of the  act or

omission,  involved  an  extreme  degree of risk,  considering  the  probability  and

magnitude of the potential hmm to Plaintiffs and others.

342.    Defendants  had  actual, subjective  awareness  of the  risk  involved

in   the   above-described   acts   or   omissions,   but   proceeded   with   conscious

indifference to the rights, safety, or welfare of Plaintiffs and oth1ers.

343.    Plaintiffs intend to show that the factors the jury may consider in determining the amount of exemplary damages which should be awarded include:

    a. the nature of the wrong committed by Defendants;
    (l) the character of Defendants' conduct;

    (m) the degree of culpability of Defendants;
    (6) the situation and responsibility of the parties concerned; and

    (7) the extent to which Defendants' conduct offends a public sense of justice and propriety.

344.    Based on the facts stated herein, Plaintiffs requests exemplary damages be awmded to Plaintiffs from Defendant.

## IX.    JURY DEMAND

345.    Plaintiffs demand a jury trial and previously tendered the appropriate fee.

## CONDITIONS PRECEDENT

346.    All conditions precedent have been performed or have occurred under Rule 54 of the TEXAS RULES OF Crvn, PROCEDURE for:

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray

347.    Judgment in favor of plaintiffs and this; on all Counts;

348.    Pre-judgment and post-judgment interest in such monetary relief;

349.    An award of reasonable attorney's fees and costs of Plaintiffs; and

350.    Such other and farther relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court

Respectfully Submitted,

By:   /s/ <u>Diogu Kalu Diogu II, LL.M</u>
Diogu Kalu Diogu II, LL.M.
State bar No. 24000340
DIOGU LAW FIRM PLLC
4726 Gainsborough Drive,
Brookshire, Texas 77423
Phone (713) 791 3225
Fax   (832) 408-7611
diogu.diogu.law.firm@gmail.com
ATTORNEY FOR PLAINTIFFS